Ireneusz "Eric" MIETELSKI and Bonnie Mietelski, Appellees,

v.

Kirsten Janice BANKS, Appellant.

Superior Court of Pennsylvania.

Argued April 13, 2004.

Filed July 8, 2004.

Joseph T. Murphy, Philadelphia, for appellant.

Kent D. Mikus, Lancaster, for appellees.

BEFORE: BENDER, McCAFFERY and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment entered in favor of Appellees in an action for personal injury resulting from an automobile accident. Appellant raises three issues for our consideration: whether the trial court erred in excluding from the jury videotape surveillance evidence of Appellee, Ireneusz "Eric" Mietelski, due to unfair surprise and prejudice caused by late production of the tape; whether the court erred in failing to charge the jury that it had to consider whether Appellant's negligence was a substantial factor in producing Eric Mietelski's injuries; and whether the court erred in failing to grant a remittitur in this case? We vacate and remand.

¶ 2 On February 3, 2000, Appellees were occupying a motor vehicle and were stopped at a red light on Shillington Road in Berks County, Pennsylvania, when their vehicle was struck from behind by a vehicle driven by Appellant. The force of the impact caused Appellees' vehicle to spin around and crash into a truck situated in front of Appellees' vehicle which was also stopped in line awaiting the traffic light to turn from red to green.

¶ 3 On June 1, 2001, Appellees filed a complaint alleging personal injury resulting from the collision. Appellee Eric Mietelski alleged that he suffered a slipped disk in his back, an injury to his sacroiliac (SI) joint, an aggravation of a pre-existing neck injury and failed back syndrome. He further alleged that he had a guarded prognosis and, as a heavy laborer, may

never be able to perform his prior work again. Appellee Bonnie Mietelski alleged that she suffered a strain to her lower back.

¶ 4 Trial commenced in the within matter on March 24, 2003 and concluded with the jury rendering a verdict in favor of Appellee Eric Mietelski in the amount of $761,898.87. The jury awarded Appellee Bonnie Mietelski $0. Appellant filed timely post-trial motions which were denied on July 21, 2003, after argument: held on June 20, 2003. The present, timely appeal followed.

¶ 5 Appellant first contends that the court erred in excluding videotape surveillance evidence of Appellee Eric Mietelski and preventing Appellant's expert witness from commenting upon the content of the tape. Appellant levels three separate arguments relating to the court's preclusion of this evidence. However, the trial court has relied almost solely upon the fact that Appellees' attorney was not apprised of the existence of the tape until late Friday afternoon when Appellant's expert was to be deposed on Monday morning. As such, and since we conclude that the trial court did not err in this respect, we will confine our discussion to this issue.

¶ 6 At trial, Appellant conceded that Appellee Eric Mietelski suffered personal injury as a result of the collision in question here. However, Appellant vigorously contested the extent of Appellee's injuries attributable to the accident. To aid her case, Appellant enlisted the services of a videographer to surreptitiously videotape Appellee Eric Mietelski from January 25, 2003 to February 4, 2003. This tape depicted Appellee Eric Mietelski engaging in activities that seemed inconsistent with the ongoing injury/incapacity alleged, such as shoveling snow and cleaning his car of snow with a broom.

¶ 7 Appellant's medical expert, Richard Bennett, M.D., whose primary purpose at trial was to dispute the extent of Appellee Eric Mietelski's injuries, testified via videotape. Dr. Bennett's trial testimony was videotaped on Monday morning, March 17, 2003, and Appellant's counsel planned to question Dr. Bennett extensively about the videotaped surveillance footage and the effect such footage had on his expert opinion on the extent of Appellee's injuries. However, Appellees' counsel was not notified of the tape's existence until receiving a fax to that effect late-Friday afternoon, March 14, 2003. The fax invited Appellees' counsel to view the tape at Appellant's counsel's office, which was located over sixty miles away from Appellees' counsel's office. Consequently, Appellees' counsel did not take Appellant's counsel up on the invitation and did not get to view the surveillance tape until immediately prior to the taking of Dr. Bennett's trial testimony. When Dr. Bennett's testimony was ultimately taken, it departed from the opinion expressed in his three prior expert reports, ostensibly due to what was contained on the surveillance tape.

¶ 8 In response to the above circumstances, Appellees filed a motion *in limine* on March 17, 2003, seeking to bar the surveillance videotape and references to the tape at trial. Argument was held on the motion the next day, after which the court granted the motion.

¶ 9 The trial court's granting of Appellees' motion *in limine* was essentially the imposition of a sanction for failing to timely disclose the tape's existence. *See Duncan v. Mercy Catholic Medical Center*, 813 A.2d 6 (Pa.Super.2002), and *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001) (surveillance videos are discoverable; failure to timely produce or disclose a surveillance video can lead to preclusion at trial). "The decision whether to sanc-

tion a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court." *Philadelphia Contributionship Insurance Co. v. Shapiro,* 798 A.2d 781, 784 (Pa.Super.2002) (citation omitted). Thus, we review the trial court's actions against an abuse of discretion standard.

¶ 10 In granting Appellees' motion *in limine,* the court found that Appellees had been prejudiced by the failure to disclose the existence of the tape more promptly. We agree. Dr. Bennett's testimony was changed considerably due to the contents of the tape,[1] yet, due to the tardy divulging of its existence, counsel had no real opportunity to prepare a meaningful cross-examination of Dr. Bennett. Moreover, we see absolutely no justification for Appellant's failure to divulge the tape's existence in a more timely fashion. Videotaping was completed more than a month prior to the taking of Dr. Bennett's deposition and Appellant's counsel had the tape in his possession several weeks prior to the deposition. Counsel has provided no explanation for his failure to notify opposing counsel of the tape other than to state that as a strategy decision he held back on producing the videotape until after receiving Appellees' supplemental medical report. N.T. Argument, Motion *in limine,* 3/18/03, at 7. In short, we conclude that the trial court did not abuse its discretion in precluding the videotaped surveillance evidence or Dr. Bennett's reference to that evidence.

¶ 11 Appellant points to *Duncan* and *Bindschusz* and asserts that they are dis-tinguishable in that in those cases the surveillance tape was not revealed until trial was underway, while in the present case the tape was made available a week before the trial started. However, here Appellant's key medical witness testified for trial by videotape deposition on March 17, 2003, the same day that Appellees' attorney was afforded a true opportunity to see the video. Thus, although the trial had not formally commenced, in practical effect, the tape was disclosed just prior to the start of Appellant's defense. Consequently, the present case cannot be analyzed on the same terms as *Duncan* and *Bindschusz.*

¶ 12 Appellant next contends that the court erred in failing to charge the jury that it must consider whether Appellant's negligence was a substantial factor in producing Appellee Eric Mietelski's injuries since, although Appellant conceded that Appellee suffered some injury as a result of the accident,[2] Appellant contested the causal relationship between the accident and many of the injuries claimed by Appellee. We agree.

¶ 13 The relevant portions of the court's charge to the jury on the matter of causation follows:

> As to the question of whether the [d]efendant's negligence was a substantial factor in causing the plaintiffs' harm, you must treat Eric's claim differently from Bonnie's claim.
>
> The evidence offered by the plaintiffs and the [d]efendant establishes that the plaintiff, Eric, suffered harm as a result

---

1. In Dr. Bennett's report, he opined that Appellee Eric Mietelski was limited to sedentary work due to his injuries. After viewing the videotape, he changed his opinion indicating that Appellee was not suffering the kind of pain he had been led to believe and that he was capable of performing more physically demanding tasks than sedentary work.

2. Appellant contends that "Dr. Bennett disputed most of the injuries alleged by plaintiff. At best, Dr. Bennett conceded plaintiff sustained very mild neck and back injuries in this accident." Appellant's Brief at 8.

of the accident. The parties do not agree on the amount of harm he suffered but both plaintiffs' medical expert and the [d]efendant's medical expert agree that the plaintiff, Eric Mietelski, did suffer some harm as a result of the accident. Therefore, on Eric's claim, all you need do is determine the amount of his damages. The verdict slip, therefore, will not ask you whether or not the [d]efendant's negligence was a substantial factor in causing Eric's harm. It has been established based on the plaintiffs' evidence and the [d]efendant's evidence that it did.

However, when we consider Bonnie Mietelski's claim for damages, the situation is different. The evidence produced by the [d]efendant does not admit that Bonnie suffered any harm as a result of the [d]efendant's negligence. Therefore, you must find the [d]efendant's admitted negligence was a substantial factor in causing Bonnie's harm. You cannot award Bonnie damages unless and until you so find.

N.T. Trial, at 491–92.

¶ 14 The jury instructions as to specific elements of alleged damages also seem to omit any requirement that the jury find a causal link between Appellant's negligence and the injuries sustained. Typical of these instructions is the one relating to medical expenses and pain and suffering:

> Now let's look as those items in more detail. Eric is entitled to be compensated in the amount of all medical expenses reasonably incurred for the diagnosis, treatment, and cure of his injuries in the past. . . . Eric is entitled also to be compensated for all medical expenses which you find he will reasonably incur in the

future for the treatment and care of his continuing injuries..

> Eric is also entitled to be fairly and adequately compensated for such physical pain, mental anguish, discomfort, inconvenience and distress, what we usually call pain and suffering damages, type of noneconomic loss, as you find he has endured from the time of the accident until today.

*Id.* at 506–08.

¶ 15 Based upon a review of the above jury instructions, it appears that the court misapprehended the law with respect to the situation where both parties' experts agree that some injury resulted from an accident. As capsulized cogently in *Andrews v. Jackson,* 800 A.2d 959 (Pa.Super.2002), where a defendant's expert concedes that the plaintiff suffered some injury as a result of a motor vehicle accident, a jury's verdict that the defendant's negligence was not a substantial factor in bringing about at least some injury represents a rejection of uncontested evidence—that of both parties' experts—and constitutes grounds for the granting of a new trial.

¶ 16 However, from this proposition it does not logically follow that where a defendant's expert concedes **some injury** resulted from an accident that the defendant's admission acts to concede that **all injuries** alleged to have resulted from the accident were in fact caused by the accident. Since causation is an essential element of a negligence action,[3] where the degree of harm resulting from the accident is contested by the defendant the case remains essentially in the same posture as a case where causation is fully contested.

---

**3.** Our Supreme Court has noted: "[n]evertheless, in such an instance, the feasibility/appropriateness criterion would surface as a part of the plaintiff's proof of proximate causation, which, like duty, is an essential element of a negligence case." *Starr v. Veneziano,* 560 Pa. 650, 747 A.2d 867, 873 (2000).

That is, the jury must be instructed that the defendant is liable **only** for those injuries that the defendant's negligence was a substantial factor in bringing about.[4] In such a case, the jury is still not empowered to reject the uncontested evidence that some injury has resulted from the accident; however, the plaintiff is not relieved of his/her obligation to prove that the injury he/she is seeking recovery for has resulted from the defendant's negligence.[5]

¶ 17 Unfortunately, the instruction provided the jury in the present case, at the very least, was ambiguous as to the need for the jury to conclude that all injury for which the jury was awarding damages was legally caused[6] by Appellant's negligence, and could be read to have removed that causation element from the jury's consideration altogether. For instance, in the primary instruction the court instructed the jury that "all you need to do is determine the amount of [Eric's] damages." The court did not qualify the statement by adding the language "caused by the defendant's negligence," or even "caused by the accident." Thus, the jury may very well have believed that all they had to do was attach a dollar amount to Appellee's claimed injuries. While, in fairness to Appellees, some portions of the court's jury instruction utilize language tending to tie the award of damages to the accident,[7] we believe the failure to charge the jury as to the necessity of finding that Appellant's negligence was a substantial factor in bringing about the injuries for which any damages were awarded rendered the instruction erroneous and may very well have produced an erroneous award of damages. As such, we believe it necessary to vacate the judgment entered and remand for a new trial.[8]

¶ 18 Judgment vacated, remanded for new trial. Jurisdiction relinquished.

**4.** "A tortfeasor is liable for all injuries caused by his negligence." *Pavorsky v. Engels,* 410 Pa. 100, 188 A.2d 731 (1963).

**5.** In *Smith v. Putter,* 832 A.2d 1094 (Pa.Super.2003), we vacated and remanded a judgment entered where a jury found that the defendant's negligence was not a substantial factor in bringing about harm to the plaintiff. Similarly to here, the defendant's medical expert conceded that some injury had been sustained as a result of the motor vehicle accident, but contested the extent of the injuries suffered as a result of the collision. Notably, however, we limited the inquiry upon remand to damages sustained as a result of the injury both sides had agreed resulted from the accident. In this respect, we concluded that the jury's verdict was contrary to the evidence. Conversely, as to the damages that had been contested, we found the jury's verdict was not against the weight of the evidence and could stand. Implicit in this decision is a recognition that a defendant's concession that some injury resulted from an accident does not result in a concession that all injuries complained of resulted from the accident and that a plaintiff must establish a causal nexus between the defendant's negligence and all injuries for which compensation is sought.

**6.** "Pennsylvania courts have adopted the Restatement's 'substantial factor' approach concerning legal causation. Under this approach, a plaintiff must prove that a defendant's negligent conduct was a substantial factor in bringing about the harm suffered." *Trude v. Martin,* 442 Pa.Super. 614, 660 A.2d 626, 627 (1995).

**7.** A portion of the instruction on loss of earning capacity reads:

Eric is also entitled to be compensated for any loss or reduction of future earning capacity that he will suffer as a result of the injuries sustained in the accident. N.T. trial, at 507.

**8.** Our decision as to the jury charge issue renders moot the assertion that the court erred in failing to grant a remittitur.