COMMONWEALTH FINANCIAL
SYSTEMS, INC., Appellant

v.

Larry SMITH, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 25, 2010.
Filed Feb. 14, 2011.

Edwin M. Matzkin, Willow Grove, for appellant.

Lawrence S. Rubin, Media, for appellee.

BEFORE: MUSMANNO, PANELLA and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

Commonwealth Financial Systems, Inc. ("CFS") appeals from the judgment entered in favor of Ms. Larry Smith ("Ms. Smith") in this action to collect a credit card debt.[1] We affirm.

Ms. Smith obtained a Citibank credit card in 1989 and proceeded to use it for the next thirteen years. By March 2002, Ms. Smith was approximately $2,000 in debt on her credit card account. CFS buys and collects debts. In July 2004, CFS bought Ms. Smith's debt and then filed suit against her in March 2006 for breach of contract and *quantum meruit,* seeking $5,435.93, plus interest at 23.99% *per annum,* plus attorney fees at a rate of 20%, and costs. The case proceeded to arbitration. Although Ms. Smith did not appear for the arbitration, the arbitrators entered an award in her favor.

On appeal from the arbitration award, CFS attempted to prove at trial that (1) Citibank issued Ms. Smith a revolving line of credit under account number xxx–8465 in November 1989; (2) Ms. Smith used the credit card for thirteen years; (3) Ms. Smith defaulted on her payments to Citibank in January 2002 and February 2002; and (4) CFS was the current owner of the debt.[2] In support of its case, CFS proffered the following records:

(a) two monthly billing statements: the first issued on February 25, 2002, reflecting receipt of a payment posted on February 7, 2002, asserting a payment due of $44.00 and a balance of $2,257.01 as of March 20, 2002; the second issued on March 26, 2002, reflecting a late fee of $35.00 on a past due payment (Complaint Exhibit A; Trial Exhibit P–2);

---

1. CFS purports to appeal from the order entered on November 12, 2009, denying its post-trial motion; however, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." *Croyle v. Dellape,* 832 A.2d 466, 470 (Pa.Super.2003) (quoting *Hall v. Jackson,* 788 A.2d 390, 395 n. 1 (Pa.Super.2001)). Upon review, we conclude that this appeal was timely taken following post-trial motion practice, and we shall treat this appeal as a timely appeal from the judgment entered in favor of Ms. Smith on July 20, 2009. Certified Record No. 28. We have amended the caption accordingly.

2. Ms. Smith moved for dismissal of this case at the beginning of trial, arguing that CFS' complaint was filed after the four year statute of limitations for a breach of contract action had expired. 42 Pa.C.S.A. § 5525(a). Upon reviewing the relevant exhibits appended to the complaint, the trial court denied the motion, finding that Ms. Smith's default occurred on March 20, 2002, when she "failed to remit a demanded payment on March 20, 2002 following a payment posted as having been received on February 7, 2002." Trial Court Opinion, 1/26/10, at 3 n. 2. Therefore, the trial court concluded, CFS' complaint, which was filed on March 7, 2006, was within the statute of limitations. *Id.* at 3. Although the statute of limitations issue was revisited at the close of trial based on pleadings filed by CFS that were contradictory to a default date of March 20, 2002, N.T., 7/16/09, at 88–98, Ms. Smith did not file a cross-appeal. Trial Court Opinion, 1/26/10, at 3 n. 3. Therefore, the trial court's ruling on the statute of limitations issue is not before us.

(b) an unsigned, standard form copy of a 1996 "Citibank Card Agreement," issued seven years after Ms. Smith's Citibank account was opened, bearing no direct relationship to Ms. Smith's account, and reflecting 1996/1997 interest rates (Complaint Exhibit B; Trial Exhibit P–1);

(c) a "Bill of Sale, Assignment and Assumption Agreement" dated July 14, 2004, between Citibank and NCOP Capital, Inc. ("NCOP"), wherein Citibank sold to NCOP, its successors and assigns, "the Accounts described in Section 1.2 of the Agreement," including Ms. Smith's account (Trial Exhibit P–3);

(d) a "Bill of Sale, Assignment and Assumption Agreement" dated July 19, 2004 between NCOP and CFS, wherein NCOP sold to CFS, its successors and assigns "the Accounts described in Section 1.2 of the Agreement," including Ms. Smith's account (Trial Exhibit P–4).

(d) a notarized affidavit of Michael Chiodo, an employee of NCOP, dated September 24, 2004, which referenced Ms. Smith's account and her Social Security Number in the heading and provided as follows:

Michael Chiodo, being sworn, deposes and says that the affiant making this affidavit is an employee of NCO Portfolio Management, Inc.; it's [sic] Subsidiaries and Affiliates, (the "Company"), which is located at 507 Prudential Road, Horsham, PA 19044. The affiant is authorized to make the statements and representations herein. The Company's business records show that as of July 19, 2004, there was due and payable from Account # [xxx–8465] the amount of $2,780.04. The Company's business records show that this account was opened on 11/1/89. The affiant states that to the best of affiant's knowledge, information and belief there are no uncredited payments against said debt.

Complaint, 3/7/06, at Exhibit E.

CFS' only witness at trial was Mr. Daniel Venditti, the vice-president responsible for overseeing CFS' portfolio collection division. N.T., 7/16/09, at 15. Mr. Venditti testified that CFS' sole business is debt purchasing and collection. *Id.* at 14. He became involved with purchasing debt from Citibank in 2001, but he never worked for Citibank or any other credit card issuer directly. *Id.* at 21–22. Mr. Venditti explained that, in a debt purchase arrangement, the records of the seller become those of the buyer in the form of an electronic spreadsheet transmission known in the industry as "media." *Id.* at 26. For example, upon purchasing Citibank's credit card debts, including Ms. Smith's account, NCOP received information electronically from Citibank regarding Ms. Smith's address, town, state, zip code, home and work telephone numbers, credit card account number, Social Security number, default interest rate, the date the account was opened, the date of the last payment, the principal balance, the balance with accrued interest, the date of the charge off, and the final balance due and owing ($4,215.01 as of September 25, 2002). *Id.* at 41, 44–45. In turn, upon purchasing the debt bundle from NCOP, CFS received the same information electronically from NCOP.

Mr. Venditti acknowledged that he was not familiar with how Citibank or NCOP created or maintained their business records, employed or protected their computers, and electronically transmitted the spreadsheets. N.T., 7/16/09, at 51–54. Moreover, he did not have personal knowledge that the entries on the spreadsheets were made at or near the time of the events or that the data was transmitted by someone with knowledge. *Id.* at 55. As

for the credit card agreement revision dates, Mr. Venditti explained that the last revision before Ms. Smith's default was made in 1999, and a final revision was made in 2004. *Id.* at 61. He could not confirm whether the 1996/1997 Citibank credit card agreement applied to Ms. Smith's account, but he admitted that version did not mention a 23.99% interest rate or 20% counsel fees. *Id.* at 61–63, 65–67.

Defense counsel did not call any witnesses. Although CFS had delivered a notice to attend to defense counsel two days before trial, Ms. Smith did not appear, purportedly because of her advanced age and poor health. As a result, CFS could not cross-examine Ms. Smith regarding her Citibank account, her use of the credit card, and her alleged default.

At the close of trial, defense counsel objected to admission of CFS' exhibits, arguing they did not qualify as business records under Pennsylvania Rule of Evidence ("Pa.R.E.") 803(6). In response, CFS argued that, given modern computer technology and emerging case law, NCOP had the right to rely on Citibank's representations regarding the accuracy of Ms. Smith's account information and, in turn, CFS had the right to rely on NCOP's representations regarding the accuracy of Ms. Smith's account information. Not convinced that Mr. Venditti was "the right person to establish the Citibank records," the trial court found in favor of Ms. Smith. Trial Court Opinion, 1/26/10, at 10. The trial court's decision was "based, *inter alia,* upon the inadequate authentication of computerized business records as required by Pennsylvania Rule of Evidence 803(6)." *Id.* Consequently, the trial court ruled that CFS failed to establish the trustworthiness and reliability of the records sufficiently to permit their admission into evidence. *Id.* at 1. In response, CFS filed a timely mo-

tion for post-trial relief, which the trial court denied. This appeal followed.

CFS presents the following questions for our review:

1. Was the Verdict issued by the Trial Court based on an error of law that controlled the outcome of the case with regard to the Pennsylvania Rules of Evidence and the failure to allow the admission of "business records" into evidence at trial?

2. Did the Trial Court commit an error of law and/or an abuse of discretion with regard to its finding that [CFS] failed to meet the first requirement of a breach of contract action, proving the existence of a contract, because [CFS] failed to produce a signed application and/or cardmember agreement?

3. Was the decision of the Trial Court an error of law or an abuse of discretion that controlled the outcome of the case by failing to order [Ms. Smith] to appear at trial, or by failing to award sanctions pursuant to Pa.R.C.P. 234.5 and Pa.R.C.P. 4019(c)(2), because of a willful disregard of a Notice to Attend by [Ms. Smith] and her counsel, thereby precluding [CFS] from the ability to cross-examine [Ms. Smith] on whether she ever used and failed to pay the balance due, on the credit card at issue in the trial, despite her counsel having been provided with the Notice to Attend within a reasonable time prior to trial?

CFS' Brief at 3.

CFS first challenges the trial court's refusal to admit into evidence CFS' five trial exhibits. According to CFS, the account statements, bills of sale, and credit card agreement were business records supporting its cause of action for breach of contract. The trial court's ruling was prejudicial, CFS argues, because exclusion of those documents "was the sole reason that

the verdict was entered in favor of [Ms. Smith]," especially in light of the fact that Ms. Smith did not testify, present a defense, or proffer any contradictory evidence at trial. CFS' Brief at 8–9.

Initially, we note that the question of whether computerized files of an original creditor are admissible as the business records of a successor debt buyer appears to be one of first impression in this Commonwealth. Nevertheless, the applicable standard of review is well settled. "When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." *Stumpf v. Nye*, 950 A.2d 1032, 1035–1036 (Pa.Super.2008). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* (quoting *Geise v. Nationwide Life and Annuity Co. of America*, 939 A.2d 409, 417 (Pa.Super.2007) (quotations omitted)).

This case involves Pa.R.E. 803(6), which provides as follows:

> **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business ac-

tivity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108, is also relevant to this matter and provides as follows:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such to justify its admission.

After reviewing Rule 803(6) and section 6108, the trial court concluded "that no proper foundation for the evidence sought to be admitted by [CFS] was ever properly laid." Trial Court Opinion, 1/26/10, at 22.

On appeal, CFS urges us to adopt the federal "rule of incorporation" which provides that the record a business takes custody of is "made" by the business. CFS' Brief at 11 (citing *U.S. v. Adefehinti*, 510 F.3d 319, 326 (D.C.Cir.2007)).[3] According to CFS:

---

**3.** The disputed materials in *Adefehinti* were: hundreds of loan applications, sales contracts, promissory notes, verifications of deposit, verifications of employment and similar documents that, according to the government, the banks relied upon in determining whether to lend money. They were received in evidence on the basis of certificates under Federal Rule of Evidence 902(11), which permits authentication of

other courts, both Federal and state, with rules of evidence identical to or substantially similar to the Pennsylvania Rules of Evidence, have addressed this situation and have generally held that a document prepared by a third party is properly admitted as part of the business records of the acquiring business, if the business integrated the document into its records and relied upon it.

*Id.* at 12 (citing *Air Land Forwarders, Inc. v. U.S.*, 172 F.3d 1338, 1342 (Fed.Cir. 1999)).[4] Additionally, CFS contends:

cases addressing admissibility of documents prepared by third parties as business records stress two factors: the first factor is that the incorporating business relied upon the accuracy of the document incorporated and the second is that there are other circumstances indicating the trustworthiness of the document.

*Id.* at 13 (citing *Air Land,* 172 F.3d at 1343). Lastly, CFS claims, a witness who lays a foundation for the records does not have to be the author, be a participant in creation or maintenance of the records, or be able to personally attest to their accuracy. *Id.* (citing *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, 2009 U.S. Dist. Lexis 12204 (N.D.Ill.2007), and *U.S. v. Duncan,* 919 F.2d 981, 986 (5th Cir. 1990)). Rather, "a custodian or other qualified witness must explain the record-keeping procedures of the current organization and testify that he has knowledge of the procedures under which it obtained and kept the records." *Id.* (citing *Thanongsinh v. Board of Education,* 462 F.3d 762, 777 (7th Cir.2006)).

In sum, CFS asserts there is a nationwide trend and clear federal precedent for allowing the introduction of business records consisting of documents generated by third parties. *See* CFS' Brief at 16–19 (collecting cases). Moreover, CFS asserts, "Pennsylvania law is consistent with the reasoning of other jurisdictions with regard to business records." *Id.* at 14. In support of its claim, CFS proffers *American States Ins. Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880 (1993), wherein this Court held "that microfilm records of an insurance policy issued [by the original insurer] could be introduced into evidence by a successor insurance agency despite the fact that the [authenticating] witness had never worked for the original insurance agency." CFS'

---

"certified domestic records of regularly conducted activity" without "[e]xtrinsic evidence of authenticity," provided that the records are admissible under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule, and are accompanied by a certificate meeting the rule's standards.

*Adefehinti,* 510 F.3d at 324.

**4.** The disputed materials in *Air Land* were third party records of repair estimates acquired by the military. According to the *Air Land* appeals court:

[t]he Court of Federal Claims agreed with the United States that the files as a whole, including the repair estimates from third party repair shops contained therein, constituted records of the regularly conducted activity of the military in adjudicating claims, and thus the files were admissible under Rule 803(6). The trial court reasoned that documents may be admitted into evidence as the business records of one of the parties even though they were not prepared by the entity, as long as the entity is able to produce testimony that it was the entity's regular practice to obtain information from such a third party, or that the records were integrated into the office's records and relied upon in its day to day operations.

*Air Land,* 172 F.3d at 1341–1342 (citing *Air Land Forwarders, Inc. v. U.S.*, 38 Fed.Cl. 547, 555–556 (Fed.Claims Ct.1997)). Affirming, the appeals court "detect[ed] no abuse of discretion in the trial court's admission of [the] records." *Id.* at 1342.

Brief at 14.[5]

Applying the myriad federal and state cases cited in its brief, CFS concludes that it relied on Citibank's and NCOP's records and integrated them into its daily operations, including the creation of Ms. Smith's account. According to CFS, those records contained all relevant information for Ms. Smith's account: account number, name and address of account holder, balance due, date of last payment, and charge-off date. In addition, CFS contends that Mr. Venditti's testimony confirmed CFS' reliance on the records of its predecessors-in-interest and ownership of the debt. CFS also argues that its documentary evidence supports the existence of a contract, a debt, and its entitlement to damages.

CFS further concludes that it established other assurances of the documents' trustworthiness and accuracy. For example, CFS posits that computerized records "have a high degree of accuracy because the nation's business demands it[;] the records are customarily checked for correctness, and because record keepers are trained in habits of precision." CFS' Brief at 9, 20–22 (citations omitted). Also, CFS contends, there is "cross-confirmation of the information contained in electronic data provided to CFS on purchase of the account and the information contained in the account statements it sought to admit into evidence at trial." *Id.* at 21. Further, CFS points to federal regulation of the information contained in account statements and the financial institutions that prepare them as providing assurance of the records' trustworthiness. *Id.* at 23–24. And, CFS refers to the presence of Citi-

bank's logo on certain documents as the type of intrinsic evidence of authenticity addressed in Pa.R.E. 902(7), which identifies trade inscriptions, signs, tags, or labels as indicating ownership, control, and origin. *Id.* at 26. Moreover, CFS relies on authentication of the records by Mr. Venditti, a witness with sufficient personal knowledge that a matter is what its proponent claims, by direct proof, and/or by circumstantial evidence. *Id.* at 25–26 (citations omitted).

Finally, CFS argues that Ms. Smith failed to carry her burden of showing that "the sources of the information or other circumstances indicate that a business record is untrustworthy, and thus does not qualify for exception to the hearsay rule." CFS' Brief at 26 (citing *Official Comment* to Pa.R.E. 803(6)). According to CFS, Ms. Smith (a) failed "to provide any evidence or testimony that these documents or the information contained therein were untrustworthy;" (b) failed "to offer any testimony or documentation that she did not make the payments reflected, that it was not her name or address on the statement;" (c) failed to "provide another agreement that would supersede or replace that which CFS sought to introduce;" and (d) failed to dispute the account information under the Fair Credit Billing Act, 15 U.S.C. § 1666. *Id.* at 27. Moreover, CFS asserts that, contrary to Ms. Smith's insinuation, Mr. Venditti was not required to have worked for Citibank or NCOP or to have obtained knowledge with regard to Citibank's or NCOP's computer systems. *Id.* at 28.

---

**5.** CFS also cites *Ganster v. Western Pennsylvania Water Co.,* 349 Pa.Super. 561, 504 A.2d 186, 190 (1985) (holding that "in the regular course of business" includes entries made systematically and as part of a regular routine which requires the recording of events or occurrences, the reflection of transactions with others), and *In re Indyk's Estate,* 488 Pa. 567, 413 A.2d 371 (1979) (holding that a witness testifying to third party records need only possess adequate knowledge of the regularity of the record keeping process to qualify the records). CFS' Brief at 14.

In response, Ms. Smith argues that CFS could and should have established circumstantial trustworthiness with a certification from Citibank and NCOP.[6] Ms. Smith's Brief at 3–6. According to Ms. Smith, "mere acceptance or incorporation into an assignee's business records is not enough to satisfy the trustworthiness requirements of Pa.R.E. 803(6);" hence, the need for Pa.R.E. 902(11). Ms. Smith's Brief at 7.

■ Upon review of the parties' articulate arguments and the certified record at hand, we are constrained to affirm the trial court's decision. Rule 803(6) requires the proponent of documentary evidence to establish circumstantial trustworthiness. Here, the trial court did not consider "the sources of information, method, and time of preparation" sufficient to justify admission of the exhibits; nor did it consider Mr. Venditti to be "a qualified witness." Pa.R.E. 803(6) and 42 Pa.C.S.A. § 6108. According to the trial court:

> [t]he limits of Mr. Venditti's knowledge were vast. He could offer no clear response as to whether the 1996–1997 Citibank Card Agreement . . . applied to [Ms. Smith's account]. . . . Mr. Venditti could not say for certain whether [industry] requirements had actually been followed in the preparation and mainte-

nance of those records because, simply put, he was never in a position to know. Trial Court Opinion, 1/26/10, at 18. Additionally, the trial court opined that "the chain of evidence presented did not adequately authenticate the computerized business records necessary to establish their trustworthiness and reliability sufficient to permit their admission into evidence." *Id.* at 1. As an example, the trial court cited CFS' correction of a previous assertion that Citibank had initially sold Ms. Smith's account to a purchaser other than NCOP. The trial court considered this "a mistake belying the integrity repeatedly asserted by [CFS] in urging that an unbroken chain in [CFS'] receipt of this evidence guaranteed its reliability in and of itself." *Id.* at 16.

As the finder of fact, the trial court was in the best position to determine the trustworthiness of CFS' documentary evidence, as well as the credibility and reliability of Mr. Venditti's testimony. We shall not substitute our judgment for the trial court's judgment. Moreover, the record at hand supports the trial court's ruling that "all [Mr. Venditti] could offer in the way of personal knowledge regarding the within business records was baldfaced presumption that the records proffered as [CFS'] trial exhibits had been 'SAS–70 qualified',

---

**6.** A certification is described in Pa.R.E. 902(11) as follows:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
>     \*     \*     \*
>
> (11) Certified domestic records of regularly conducted activity. The original or duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, verified as provided in Pa.R.C.P. 76, certified that the record—
>
>   (A) was made at or near the time of the occurrence of the matters set forth by, or

> from information transmitted by, a person with knowledge of those matters;
>
>   (B) was kept in the course of the regularly conducted activity; and
>
>   (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.
>
> Pa.R.E. 902(11).

and the statement that this presumption was the 'extent of his knowledge' of those records." N.T., 7/16/09, at 52–54. The record also supports the trial court's finding that CFS failed to establish the trustworthiness of its documents. For example, CFS' Trial Exhibit P–1 was a 1996 version of a standard form copy of a Citibank Card Agreement, drafted nearly seven years after the Citibank credit card account was opened. Exhibit P–1 included an identification number that bore no relationship to Ms. Smith's account, an interest rate significantly less than the amount sought by CFS, and no mention of twenty percent attorney fees. Mr. Venditti acknowledged the contents of Exhibit P–1 did not include a 23.99 percent interest rate or twenty percent counsel fees. N.T., 7/16/09, at 61–68.

Paraphrasing Judge Boyko of Ohio, this Court recognizes the right of banks and their successors/assignees, holding valid credit agreements, to receive timely payments. If they do not receive timely payments, banks have the right to properly file actions on the defaulting debtor—seeking payment of the balance owed. However, we also recognize that the trial court possesses the independent obligations to preserve its judicial integrity and to jealously guard its jurisdiction. "Neither the fluidity of the secondary [debt] market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede[s] those obligations." *In re Foreclosure Cases,* 2007 WL 3232430 at *2 (N.D.Ohio 2007). Like Judge Boyko, we reject CFS' "This is how the industry does it" mantra:

> The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

*Foreclosure Cases,* 2007 WL 3232430 at *3.

Regardless of a "nationwide trend" and "clear federal precedent" for allowing the introduction of business records consisting of documents generated by third parties, the Pennsylvania Supreme Court has not seen fit to adopt the rule of incorporation. We decline CFS' invitation to do so. Given the current law of this Commonwealth regarding business records and our narrow standard of review, we discern no abuse of discretion by the trial court in denying admission of CFS' exhibits.

Next, CFS contends that the trial court erred in ruling that CFS had not established the existence of a contract. According to CFS, if the account statements had "been admitted into evidence, the contract would have been established." CFS' Brief at 34.

This Court has considered the issue of what documentation is required in a credit card collection action to prove the existence of a contract in *Atlantic Credit and Finance Inc. v. Giuliana,* 829 A.2d 340, 345 (Pa.Super.2003). Therein, Atlantic Credit filed a complaint alleging that the defendants were indebted to GM Card and that Atlantic Credit had purchased the defendants' account from GM Card. Atlantic Credit, however, failed to attach to the complaint any contract or cardholder agreement between GM Card and the defendants, or any contract or agreement between GM Card and Atlantic Credit regarding the assignment. Atlantic Credit did attach a single sheet which appeared to be a monthly statement from GM Card addressed to the defendants, which listed the total due on the account and the interest rate. We concluded that Atlantic Credit's "failure to attach the writings which assertedly establish [the creditor's] right to a judgment ... is fatal to the

claims set forth in [the creditor's] complaint." *Atlantic Credit,* 829 A.2d at 345. Thus, Atlantic Credit's failure to produce a cardholder agreement and statement of account, as well as evidence of the assignment, established a meritorious defense to the action.

Here, CFS did produce a cardholder agreement, statements of Ms. Smith's account, and documentary evidence of the assignments from Citibank to NCOP and NCOP to CFS. However, we determined above that the trial court did not err in precluding admission of CFS' documentary evidence. Without the supporting documents, CFS did not establish its right to a judgment based on the claims set forth in the complaint. *Atlantic Credit,* 829 A.2d at 345.

■ We acknowledge CFS' complaint that the trial court subsequently awarded counsel fees to Ms. Smith based on the very contract that it determined CFS failed to prove. CFS' Brief at 33. While we are empathetic toward CFS' position, we may not consider this issue. The record indicates that CFS' challenge to the award of counsel fees was not preserved for purposes of the instant review. Moreover, although CFS filed a separate appeal from the order awarding Ms. Smith counsel fees, it subsequently withdrew and discontinued that appeal. Certified Record Nos. 39 and 44. Hence, we are unable to address the trial court's seemingly inconsistent rulings.

■ Finally, CFS contends that the trial court erred in not awarding sanctions against Ms. Smith given her failure to appear at trial despite counsel having been provided with a notice to attend. CFS' Brief at 37.[7] According to CFS, 48 hours was "a more than reasonable amount of time for [Ms. Smith] to have received this notice and made arrangements to appear at trial." *Id.* at 38.

■ The decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court. *Mietelski v. Banks,* 854 A.2d 579, 581–582 (Pa.Super.2004). "We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Eichman v. McKeon,* 824 A.2d 305, 312 (Pa.Super.2003), *appeal denied,* 576 Pa. 712, 839 A.2d 352 (2003).

Here, the trial court disposed of this issue as follows:

> The record, however, reflects that [CFS'] Notice to Attend was not timely sent and that [CFS] did not request the Court to order the appearance of [Ms. Smith] at the trial.
>
> [CFS] appended, as Exhibit "A" to its Motion for Post–Trial Relief, a copy of the aforesaid "Notice to Attend" directing [Ms. Smith] to appear for trial in this matter scheduled for July 16, 2009, and a facsimile cover sheet evincing that the said Notice was sent to [Ms. Smith] through her counsel on July 14, 2009. (Plaintiff's Motion for Post–Trial Relief, Exhibit "A"). At the commencement of the trial, the following dialogue ensued between ... counsel and the Court:
>
> > PLAINTIFF'S COUNSEL: I note that [Ms. Smith] isn't here. I did file a Motion [sic] to Attend pursuant to Rule 234.3 and she is not here. I would therefore ask for ... appropriate sanctions pursuant to 4019(c), that

---

7. CFS sought sanctions pursuant to Pa.R.C.P. 234.5 (**Failure to Comply with Subpoena.** **Notice to Attend or Notice to Produce**) and Pa.R.C.P. 4019 (**Sanctions**).

the defense will not be permitted to support or oppose any claims or defenses [and] prohibiting the party from introducing into evidence any documents, things, or testimony.

DEFENSE COUNSEL: Your Honor with—to respond to that, Mr. Matzkin waited until the day before trial to serve that notice. I received it yesterday. [Rule of Civil Procedure] 234.2 or 4 I believe he's referring to talks about reasonable notice. Now I don't think the day before trial is reasonable notice in light of the fact that my client wasn't even there during the arbitration and he knew she wasn't there and he complained that he wasn't able to cross-examine her. Now it has been months and months and months since the arbitration. He knew that she was an elderly person. He knew that I wasn't going to bring her. And yet he waits until the day before trial to send the notice. I was—on that day I had a hearing in Bankruptcy Court. How could I possibly bring in an elderly woman with medical problems and prepare her and go and do my bankruptcy hearing the day before trial? I don't think the statute thinks that's a reasonable notice. I think reasonable notice is 30 days, but even if it's not 30 days I don't think it's one day.

THE COURT: Why did you wait, Mr. Matzkin?

PLAINTIFF'S COUNSEL: ... We received—my office received a telephone call on July 10th assigning the matter for today.

THE COURT: And you were—before that you knew you were on the June 22nd trial list.

PLAINTIFF'S COUNSEL: We clearly were on the list. However the notice to appear, which is a prescribed form from the state, tells the person that they have to appear in such and such Courthouse, such and such [c]ourtroom at such and such time.

THE COURT: Well you can put [TBA] in there.

PLAINTIFF'S COUNSEL: I didn't have that information.

THE COURT: Well, you knew it was going to trial. You wanted [Ms. Smith] at trial. You could have even written Mr. Rubin a letter saying, "Please produce your client."

PLAINTIFF'S COUNSEL: I did.

\* \* \*

PLAINTIFF'S COUNSEL: Since she did not appear at arbitration, I don't know how old she is and I have no idea of her health condition, nor do I care to be perfectly frank. I filed a notice pursuant to a rule. I believe based upon the advice of when the matter was going to trial it was timely because Mr. Rubin, in my opinion, should have known that he would have to produce his Defendant, his client to appear at a trial.

THE COURT: No he doesn't. It could be his trial strategy that he decides not to produce his client. If you want her there, you should file a notice ... [reading from Pa.R.C.P. 234.3] "The notice shall be served reasonably in advance of the date upon which attendance is required. I may also require the party to produce documents or things."

Following additional discussion adducing that [Ms. Smith's] attorney did not plan to produce his client as a trial witness, the Court denied [CFS'] Motion for Sanctions in the nature of prohibiting [Ms. Smith] from supporting or opposing any claims or defenses and from introducing into evidence any docu-

ments, things or testimony on grounds that the Notice to Appear at trial was untimely sent by [CFS] to [Ms. Smith] through her counsel. (N.T. 4–5, 9–11). The Court here again notes that [CFS'] counsel never asked the Court to order [Ms. Smith's] appearance at that proceeding. Most crucially for the viability of this contention, however, is the fact that [CFS'] counsel raised no objection of record to the Court's denial of its Motion for Sanctions on grounds that the Notice to Attend was untimely. (N.T. 10–11). This contention, therefore, must be deemed waived. Pennsylvania Rule of Civil Procedure 227.1(b)(1); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

Trial Court Opinion, 1/26/10, at 12–14 (most bracketed material original).

In response to the trial court's finding of waiver, CFS contends on appeal that "Pa. R.C.P. 227.1(b)(1) does not require that [CFS] specifically object to the ruling with regard to [Ms. Smith's] disregard of the Notice to Attend. From the context of the discussion [on the record], it should have been clear that [CFS] was objecting to the failure of [Ms. Smith] to appear and was preserving the right to appeal that ruling." CFS' Brief at 41. We agree that CFS' challenge is not waived.

Pa.R.C.P. 227.1 provides, in relevant part, as follows:

(b) Except as otherwise provided by Pa. R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1) **if then available, were raised in pre-trial proceedings** or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

Note: If no objection is made, error which could have been corrected in pre-

trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.

**Pa.R.E. 103(a) provides that the specific ground for an overruled objection,** or the substance of excluded evidence, **need not be stated at or prior to trial, or without having made an offer of proof, if the ground of the objection, or the substance of the evidence sought to be introduced, was apparent from the context.**

Pa.R.C.P. 227.1(b)(1) (emphasis supplied).

The record indicates that CFS raised its objection to Ms. Smith's absence in a pre-trial proceeding and that the ground of CFS' objection "was apparent from the context" of the lengthy discussion among counsel and the trial court. N.T., 7/16/09, at 4–10. Furthermore, CFS again raised its objection in a post-trial motion pursuant to Pa.R.C.P. 227.1. Therefore, we shall address the merits of CFS' challenge to the denial of sanctions. In doing so, we consider the meaning of "reasonable notice."

■ "Where, as here, the facts are undisputed and the inference plain, the determination of what constitutes a reasonable time is a question of law for the court." *Truscon Steel Co. v. Fuhrmann & Schmidt Brewing Co.,* 327 Pa. 10, 13, 192 A. 679, 680 (1937). "By 'reasonable time' is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow. It never means an indulgence in unnecessary delay." *Id.* at 14, 192 A. at 680. In the employment context, for example, our Supreme Court has found that a pre-termination notice sent four days before a review hearing did not constitute sufficient time to allow the employee to prepare "to cross-examine witnesses, to introduce evidence on his own behalf, and to make

argument." *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 465, 431 A.2d 946, 948 (1981).

Here, on the morning of trial, CFS explained that, because Ms. Smith had not appeared at the arbitration, it wanted to secure her appearance at trial by filing a notice to attend. N.T., 7/16/09, at 8. In response to the trial court's questions, CFS admitted that, as of July 10, 2009, it knew the matter was scheduled for trial on July 16, 2009. *Id.* at 6. However, rather than acting immediately by calling defense counsel or soliciting an order of court, CFS delayed several days to fax a form to Ms. Smith's counsel, requesting her appearance. CFS justified its delay by claiming it did not know the time and courtroom for the trial. *Id.* at 7. Even if CFS did not have such details, it could have, at least, immediately alerted defense counsel to the fact that Ms. Smith's presence at trial was requested and that she should be prepared. Moreover, CFS' attempt to shift the blame to defense counsel strikes us as disingenuous. Defense counsel did not prepare Ms. Smith for trial sooner because his trial strategy was not to call her. *Id.* at 9. Finally, the record indicates that CFS asked "for an appropriate sanctions [sic] pursuant to 4019(c), specifically (c)(2), that the defense will not be permitted to support or oppose any claims or defenses prohibiting the party from introducing into evidence any documents, things or testimony." N.T., 7/16/09, at 5. As the trial court observed, CFS, in effect, received that relief. *Id.* at 10. Ms. Smith did not put on a defense through testimony or documentary evidence. *Id.* at 81–99.

In light of the situation of the parties and the circumstances of the case, therefore, we conclude that CFS' notice did not constitute sufficient time to allow Ms. Smith to prepare "to cross-examine witnesses, to introduce evidence on [her] own behalf, and to make argument." *Callahan,* 494 Pa. at 465, 431 A.2d at 948. Thus, the trial court did not err in finding that CFS' notice was untimely.

In sum, we discern no merit to CFS' well-crafted but unsupported claims. Thus, we are constrained to affirm the trial court's disposition.

Judgment affirmed. Jurisdiction relinquished.