**In re D. Erik VON KIEL, Debtor.**

**D. Erik Von Kiel, Plaintiff**

v.

**U.S. Dept. of Health & Human Services, et al., Defendants.**

**Bankruptcy No. 10–21364REF.
Adversary No. 11–2022.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 19, 2012.

---

Charles Laputka, Allentown, PA, for Debtors.

### MEMORANDUM OPINION

RICHARD E. FEHLING, Bankruptcy Judge.

## I. INTRODUCTION

■ Plaintiff/Debtor, Erik Von Kiel, formerly known as Dennis Fluck, ("Debtor"), is a doctor who owed, as of February 29, 2012, $200,239.42 in Health Education Assistance Loans ("HEAL loans"). *See* Declaration of Barry M. Blum ("Blum Declaration"), p. 6, ¶ 32 (attached to Defendants' Motion for Summary Judgment as Exhibit 1).[1] Through his Complaint, Debtor seeks a determination that for various reasons, the HEAL loans should be deemed not to exist (Counts 1, 2, 3, and 6) or, in the alternative, that the HEAL loans were discharged in his 1991 bankruptcy case (Count 4) or, again in the alternative, are dischargeable in this bankruptcy case (Count 5).

Defendants, United States Department of Health & Human Services ("HHS") and

---

1. I reject Debtor's attack on the admissibility of the Blum Declaration. The arguments advanced by Debtor were flatly rejected by the Sixth Circuit Court of Appeals in a well reasoned decision that also involved a declaration filed by Mr. Blum. *United States v. Petroff–Kline,* 557 F.3d 285, 291–93 (6th Cir. 2009); *see also United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir.2001), which I adopt herein. As the Sixth Circuit Court of Appeals recognized, the Blum Declaration qualifies as a business record under Fed.R.Evid. 803(6) because "to qualify under the business records exception to the hearsay rule a 'witness need only have knowledge of the procedures under which the records were created,' not knowledge of the actual entries in the records." *Petroff–Kline,* 557 F.3d at 292, quoting *United States v. Wables,* 731 F.2d 440, 449 (7th Cir.1984). *See also Lawrence,* 276 F.3d at 195. The Blum Declaration is also self authenticating under Fed.R.Evid. 902(11), *Petroff–Kline,* 557 F.3d at 292. In addition, Debtor's reliance on *Commonwealth Fin. Sys., Inc. v. Smith,* 15 A.3d 492 (Pa.Super.Ct.2011), is misplaced because the *Smith* case involved application of the Pennsylvania Rules of Evidence, whereas Fed. R. Bankr.P. 9017 makes clear that the Federal Rules of Evidence apply to bankruptcy cases. The Superior Court in *Smith* acknowledged that the Pennsylvania Rules of Evidence that deal with the admissibility of business records of a predecessor company or organization differ from the Federal Rules of Evidence on this topic and have not been interpreted by the Pennsylvania Supreme Court consistently with the way federal courts have interpreted the Federal Rules on this topic. *Smith,* 15 A.3d at 497–500. The Pennsylvania Superior Court's decision in *Smith* is therefore neither controlling nor persuasive.

United States Department of Justice (collectively "Defendants"), have filed their Motion for Summary Judgment, which is the subject of this Memorandum Opinion. Defendants maintain that no genuine issues of material fact exist and that they are entitled to judgment on the Complaint as a matter of law because: (1) I lack jurisdiction over Counts 1, 2, 3, and 6 of the Complaint under the Rooker–Feldman doctrine; (2) even if I have jurisdiction over Counts 1, 2, 3 and 6, these Counts are barred under the doctrine of res judicata, also known as claim preclusion; (3) the HEAL loans were not discharged in Debtor's prior bankruptcy case (Count 4); and (4) the HEAL loans cannot be discharged in Debtor's present bankruptcy case (Count 5) because I denied Debtor a discharge in this bankruptcy case by my Memorandum Opinion and Order entered on January 5, 2012, in *Deangelis v. Von Kiel (In re Von Kiel)*, Adv. No. 10-2136 (10-21364REF), reported in 461 B.R. 323 (Bankr.E.D.Pa.2012).[2] Debtor responded by filing a Cross–Motion for Summary Judgment.

For the reasons that follow, I find that no genuine issue of material fact exists and Defendants are entitled to summary judgment as a matter of law on Counts 1–6 of the Complaint. I therefore grant Defendants' Motion for Summary Judgment on these Counts and deny Debtor's Cross–Motion for Summary Judgment. This Memorandum Opinion constitutes my findings of fact and conclusions of law.

## II. PROCEDURAL HISTORY

Debtor filed his 15–count Complaint against Defendants and the Honorable Petrese Tucker, United States District Court Judge for the Eastern District of Pennsyl-

vania, United States Attorney David Zane Memerager, Assistant United States Attorney Virginia Powell, United States Trustee Roberta A. DeAngelis and Assistant United States Trustee Dave Adams on February 17, 2011.

On March 24, 2011, Defendants filed a Motion To Dismiss and/or Strike Complaint ("Motion To Dismiss"). Both parties filed briefs and I heard argument on the Motion To Dismiss on May 12, 2011. After which I entered a bench Order that granted the Motion To Dismiss in part, denied it in part and took under advisement and directed the parties to brief the res judicata and collateral estoppel arguments raised by Defendants.

My May 12, 2011 Bench Order was later memorialized in two written Orders. My May 13, 2011 written Order directed the parties to brief the res judicata and collateral estoppel arguments and granted in part and denied in part Defendants' Motion To Dismiss.

Specifically, my May 18 Order dismissed Judge Tucker as a defendant in this proceeding because Debtor consented to her dismissal during the May 12, 2011 argument. In footnote 3, I explained that Counts 11 and 12 were the only counts of the Complaint that pertained to Judge Tucker and I dismissed Counts 11 and 12.

My May 18 Order also dismissed United States Attorney David Zane Memerager, Assistant United States Attorney Virginia Powell, United States Trustee Roberta A. DeAngelis, and Assistant United States Trustee Dave Adams as defendants in this proceeding because they were entitled to absolute immunity from this suit and because they had no duty to report or investigate the claims that Debtor argued

---

**2.** Debtor appealed this decision. The appeal is presently pending before the Honorable Cynthia M. Rufe, United States District Court Judge, Eastern District of Pennsylvania, docketed at 5:12–cv–00972CMR.

should have been reported or investigated. Finally, my May 18 Order dismissed Counts 7–11 and Counts 13–15 of the Complaint for Debtor's failure to state claims that were plausible on their face under Fed. R. Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6). After my May 18 Order, Counts 1–6 were the only counts of the Complaint that remained pending and HHS and the United States Department of Justice were the only parties who remained as defendants.[3]

The parties then briefed the res judicata and collateral estoppel issues, and on October 7, 2011, I entered an Order granting Defendants' Motion To Dismiss as to Counts 1, 2, 3, 4 and 6 of the Complaint. After my October 7 Order, only Count 5, which requests a determination that the HEAL loans are dischargeable in this bankruptcy case, remained pending.

On October 21, 2011, Debtor filed a Motion To Reconsider my October 7, 2011 Order ("Motion To Reconsider"), as well as a Request for Extension of Time To Complete his Motion To Reconsider. Meanwhile, Defendants filed their Answer to Count 5 of the Complaint on October 28, 2011. On November 3, 2011, Debtor filed another Motion To Reconsider my October 7, 2011 Order. For some reason, on November 18, 2011, Debtor, without explanation and without seeking leave of court, filed an Amended Complaint which purported to reinstate Counts 1, 2, 3, 4 and 6

of the Complaint. On November 21, 2011, I dismissed the Amended Complaint, finding that Debtor violated Fed.R.Civ.P. 15(a)(1)[4] by filing the Amended Complaint without first obtaining leave of court.

Meanwhile, on January 20, 2012, Defendants filed a Renewed Motion To Dismiss Count 5 of Complaint. On February 13, 2012, I held a hearing on Debtor's Motion To Reconsider and I heard argument on Defendants' Renewed Motion To Dismiss Count 5. On February 13, 2012, I entered an Order granting Debtors' Motion To Reconsider and vacating my October 7, 2011 Order dismissing Counts 1–4 and Count 6 of the Complaint. My February 13 Order also denied Defendants' Renewed Motion To Dismiss Count 5, and directed Defendants to file, by March 10, 2012, a Motion for Summary Judgment on Counts 1–6 of the Complaint or an Answer to Counts 1–6 of the Complaint. I also directed Defendants to limit any summary judgment motion to three issues, namely: (1) Whether Debtor's HEAL loans were discharged in a prior bankruptcy; (2) whether *In re Dabrowski*, 257 B.R. 394 (Bankr.S.D.N.Y. 2001) has precedential value in the Third Circuit; and (3) the effect of my January 5, 2012 Memorandum and Order denying Debtor a discharge[5] on Debtor's ability to have his HEAL loans discharged in his main bankruptcy case. Defendants filed their Motion for Summary Judgment and brief in support thereof on March 12, 2012.[6]

---

**3.** On September 2, 2011, however, Defendants filed a "Renewed Motion To Dismiss Count 12 of Complaint" ("Renewed Motion"). On September 14, 2011, Debtor responded by filing a Motion To Dismiss Defendants' Renewed Motion. On October 5, 2011, I denied Defendants' Renewed Motion as moot because Count 12 had previously been dismissed in my May 18, 2011 Order.

**4.** Fed.R.Civ.P. 15(a)(1) is made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr.P. 7015.

**5.** The Memorandum and Order denying Debtor his discharge was entered in *Deangelis v. Von Kiel (In re Von Kiel)*, Adv. No. 10-2136 (10-21364REF), reported in 461 B.R. 323 (Bankr.E.D.Pa.2012).

**6.** On April 6, 2012, Debtor filed a Motion To Strike Defendants' Brief Supplementing Their Motion for Summary Judgment for Untimely Filing. I denied this Motion in my Order entered on April 11, 2012, in which I explained that I desired to rule on the merits of the proceeding and that, nonetheless, Defen-

Debtor filed a Motion for Summary Judgment (construed as his "Cross–Motion for Summary Judgment") with accompanying brief on April 6, 2012, to which Defendants filed a Reply on April 13, 2012. Debtor then filed a Response to Defendants' Reply on April 27, 2012 and a supplemental brief on May 4, 2012. All briefs are now filed and Defendants' Motion for Summary Judgment and Debtor's Cross–Motion for Summary Judgment are now ripe for my disposition.

## III. FACTUAL BACKGROUND

Debtor is a medical doctor who financed his education with the use of Health Education Assistance ("HEAL") loans insured by the federal government under the Public Health Service Act, 42 U.S.C. § 292f–p. Debtor's HEAL loans came due on the first day of the tenth month after Debtor ceased being a full-time student. The HEAL loans financed by First Eastern Bank and First American Bank, N.A. were subsequently purchased, and were held, by the Student Loan Marketing Association ("Sallie Mae"). Defendants refer to these loans as "Claim I." The remaining HEAL loans were held by the Pennsylvania Higher Education Assistance Agency ("PHEAA"). Defendants refer to these loans as "Claim II." *See* Blum Declaration, pp. 1–2, ¶ 4.

## A. CLAIM I—SALLIE MAE LOANS

The loans that were held by Sallie Mae (Claim I) first came due on March 30, 1989, after Debtor completed his internship programs and the nine month forbearance period expired. *See* Blum Declaration, p. 2, ¶ 5. From May 10, 1989 through January 29, 1998, Debtor made 34 payments on these loans totaling $26,717.03. Debtor made no other payments on the Sallie Mae loans. *See* Blum Declaration, p. 2, ¶ 6. Sallie Mae declared Debtor in default and filed a complaint against Debtor in 2000 in the Lehigh County Court of Common Pleas, Civil Division, docketed at No. 2000–C–757. On July 14, 2000, the state court entered a judgment in this action against Debtor in the amount of $132,185.27. *See* Blum Declaration, p. 2, § 7, and Exhibit D (Blum–00054–72) (certified state court docket and pleadings). Sallie Mae then filed an insurance claim against HHS. HHS paid Sallie Mae's claim on November 20, 2000, and Sallie Mae assigned the judgment to HHS. *See* Blum Declaration, pp. 2–3, ¶¶ 8–9, Exhibit E (Blum–00073–4), Exhibit G.[7]

dants' Motion was timely filed because the deadline for the filing of the motion fell on a Saturday. Therefore, under Fed. R. Bankr. P. 9006(a)(1)(c), the deadline advanced to the next business day, which was the day on which Defendants filed their Motion for Summary Judgment and brief.

7. The record reflects the following: (1) The judgment entered on June 14, 2000, against Debtor and in favor of Sallie Mae by the Lehigh County Court of Common Pleas was for $132,185.27; (2) the insurance claim submitted by Sallie Mae to HHS was for $121,087.54; and (3) HHS paid Sallie Mae only $118,219.19 of its $121,087.54 claim. Defendants have not explained why HHS did not reimburse Sallie Mae for the full amount of the judgment or claim. My review of the

Exhibits attached to the Blum Declaration, however, leads me to conclude that it might be, at least in part, because Sallie Mae did not submit documents to HHS in a timely fashion. Regardless, neither the exact amount of Sallie Mae's claim or judgment nor the exact amount of HHS's claim against Debtor need be resolved to decide the issues raised in the Complaint and Summary Judgment Motions. The issues are: (1) Do I lack jurisdiction over Counts 1, 2, 3 and 6 of the Complaint under Rooker–Feldman; (2) if I have jurisdiction over Counts 1, 2, 3, and 6, are those counts barred by res judicata (claim preclusion); (3) was the debt owed by Debtor to HHS discharged in Debtor's prior bankruptcy case (Count 4); and (4) is the debt owed by Debtor to HHS dischargeable in this case (Count 5).

84

After receiving the assignment of the judgment, HHS repeatedly attempted to collect the debt from Debtor. *See* Blum Declaration, p. 3, ¶¶ 10–12, Exhibit H. On September 19, 2002, HHS registered the judgment with the United States District Court for the Eastern District of Pennsylvania. *See* Blum Declaration, p. 3, ¶ 13, Exhibit I (Blum–00088–90).

### B. CLAIM II—PHEAA LOANS

The loans that were held by PHEAA (Claim II) first became due on May 15, 1989. *See* Blum Declaration, p. 3, ¶ 14. From May 9, 1989 through April 22, 1998, Debtor made 43 payments on the PHEAA loans totaling $23,027.93. Debtor made no other payments on the PHEAA loans. *See* Blum Declaration, p. 4, ¶ 15. PHEAA declared Debtor in default and filed a complaint against Debtor in the Lehigh County Court of Common Pleas, Civil Division, docketed at Case No. 1999–N–0761. On August 3, 1999, the state court entered a judgment in this action against Debtor in the amount of $29,008.36 plus interest accruing at 7.375%. *See* Blum Declaration, p. 4, § 16, and Exhibit L (Blum–00132–40) (certified state court docket and pleadings). PHEAA then filed an insurance claim against HHS. HHS paid PHEAA's claim in the amount of $28,581.00 on Sep-

tember 15, 1999 and PHEAA assigned the judgment to HHS. See Blum Declaration, pp. 4, 5, ¶¶ 17, 18, 23, Exhibit M (Blum–00143), Exhibit N (Blum 00145–46), Exhibit O.[8]

After receiving the assignment of the judgment, HHS repeatedly attempted to collect the debt from Debtor. *See* Blum Declaration, p. 4, ¶¶ 19–22, Exhibit O. On September 19, 2002, HHS registered the judgment with the United States District Court for the Eastern District of Pennsylvania. *See* Blum Declaration, p. 4, 5, ¶ 23, Exhibit I (Blum–00088–90).

## IV. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).[9] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt,*

---

**8.** The record reflects the following: (1) The judgment entered on August 3, 1999 against Debtor and in favor of PHEAA by the Lehigh County Court of Common Pleas was for $29,008.36; (2) the insurance claim submitted by PHEAA to HHS was for $29,094.98; and (3) HHS paid PHEAA $28,581.00 of its $29,094.98 claim. Defendants have not explained why HHS did not reimburse PHEAA for the full amount of the judgment or claim. My review of the Exhibits attached to the Blum Declaration, however, leads me to conclude that it might be, at least in part, because PHEAA failed to submit certain documents to HHS in a timely fashion. Regardless, neither the exact amount of PHEAA's claim or judgment nor the exact amount of HHS's claim

against Debtor must be resolved to decide the issues raised in this Complaint and Summary Judgment Motion. The issues are: (1) Do I lack jurisdiction over Counts 1, 2, 3 and 6 of the Complaint under Rooker–Feldman; (2) if I have jurisdiction over Counts 1, 2, 3, and 6, are those counts barred by res judicata (claim preclusion); (3) was the debt owed by Debtor to HHS discharged in Debtor's prior bankruptcy case (Count 4); and (4) is the debt owed by Debtor to HHS dischargeable in this case (Count 5).

**9.** Fed.R.Civ.P. 56 is made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr.P. 7056.

*Ltd.*, 90 F.3d 737, 743 (3d Cir.1996) (citations omitted).

The party requesting summary judgment bears the burden of showing that the record contains no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir.2004). If the moving party meets this burden, the burden then shifts to the party opposing summary judgment to present "specific facts showing that there is a *genuine issue* [of material fact] *for trial*," offering concrete evidence supporting each essential element of its claim." *Olick v. Kearney (In re Kearney )*, 466 B.R. 680, 696 (E.D.Pa.2011) quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). The non-moving party cannot defeat a well supported summary judgment motion by reasserting unsupported factual allegations contained in his pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, and he may not rely on "mere allegations, general denials, or . . . vague statements. . . ." *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir.1992) (quotation omitted). Rather, he must rebut the motion by designating "specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute." *GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 486 (Bankr.E.D.Pa.2010).

## B. DEBTOR'S HEAL LOANS WERE NOT DISCHARGED IN HIS PRIOR BANKRUPTCY CASE

■ Count 4 of Debtor's Complaint is labeled, "Loan Discharged in Bankruptcy already" and alleges that the HEAL loans were discharged in Debtor's prior chapter 7 bankruptcy case filed in 1991. At the time Debtor filed his prior bankruptcy case in 1991, a HEAL loan was automatically excepted from discharge unless the debtor filed an adversary complaint requesting that the HEAL loan be discharged. A debtor was obliged to establish: (1) The discharge would be granted after the expiration of the five year period [10] beginning on the first date when repayment of the HEAL loan was required; (2) excepting the HEAL loan from discharge would be unconscionable; and (3) the Secretary had not waived rights to offset the loan amount from certain reimbursements from HHS, 42 U.S.C. § 294f(g), now renumbered as § 292f(g); *United States v. Wood*, 925 F.2d 1580, 1582–83 (7th Cir.1991); *United States v. Degerness*, Civ. A. No. 91–A–806, 1992 WL 295952, at *2 (D.Colo. Sept. 14, 1992). A debtor must have filed an adversary complaint requesting that the HEAL loan be discharged and establishing all three of these conditions to discharge the HEAL loans. *Wood*, 925 F.2d at 1582–83; *Degerness*, 1992 WL 295952, at *2.

■ Debtor and his wife, Insa Von Kiel, filed a chapter 7 bankruptcy petition in this court on September 9, 1991. This filing predated my tenure as a bankruptcy judge, and was assigned to my predecessor, the Honorable Thomas M. Twardowski. My review of the docket entries contained in Debtor's 1991 bankruptcy case reveals that Debtor never filed an adversary complaint in that case requesting that

---

**10.** In 1993, Congress amended this provision to change the period of strict nondischargeability from 5 years to 7 years. National Institutes of Health Revitalization Act of 1993, Pub. L. 103–43, § 2014.

the HEAL loans be discharged.[11] The HEAL loans were not, therefore, discharged in Debtor's 1991 bankruptcy case.[12] 42 U.S.C. § 294f(g), now renumbered as § 292f(g). *Wood,* 925 F.2d at 1582–83; *Degerness,* 1992 WL 295952, at *2. Because Debtor failed to file an adversary complaint in his 1991 bankruptcy case requesting that the HEAL loans be discharged, the HEAL loans were not discharged in Debtor's 1991 bankruptcy case. Defendants are therefore entitled to judgment as a matter of law on Count 4 of the Complaint.

## C. DEBTOR'S HEAL LOANS WERE NOT DISCHARGED IN HIS 1991 BANKRUPTCY CASE: THE STATE COURT JUDGMENTS THEREFORE ARE NOT VOID

█ The two state court judgments entered against Debtor by the Lehigh County Court of Common Pleas were based on the HEAL loans owed by Debtor to HHS. In his Counts 1, 2, 3 and 6 of the Complaint, Debtor attempts to challenge the existence of the HEAL loans. To adjudicate these Counts would require that I review and set aside the two state court judgments entered against Debtor. The Rooker–Feldman doctrine, however, prohibits me from exercising jurisdiction over a dispute that challenges the validity of a state court judgment. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See also Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166–70 (3d Cir.2010); *Madera v. Ameriquest Mortgage Co. (In re Madera),* 586 F.3d 228, 232 (3d Cir.2009) (the Rooker–Feldman doctrine applies even if bankruptcy jurisdiction over a proceeding exists); *Randall v. Bank One Nat'l Ass'n (In*

---

11. I take judicial notice, under Fed.R.Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr.P. 9017), of the docket entries and the bankruptcy petition, schedules, and statement of financial affairs filed in Debtor's prior bankruptcy case. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* No. 93C188, 1993 WL 69146, at *2 (N.D.Ill. March 8, 1993); *Calabria v. CIT Consumer Group (In re Calabria),* 407 B.R. 671, 673, 675–76 (Bankr.W.D.Pa.2009) (bankruptcy court may take judicial notice of the records of a prior bankruptcy proceeding for the purpose of ascertaining the timing and status of events, such as the filing of documents or pleadings); *In re Paolino,* No. 85–00759F, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa. Jan. 11, 1991): *see generally Nantucket Investors II v. California Federal Bank (In re Indian Palms Assoc., Ltd.),* 61 F.3d 197 (3d Cir.1995).

I may not take judicial notice sua sponte of the facts contained in Debtor's prior bankruptcy case that are in dispute, *In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942), but I may take judicial notice of adjudicative facts "not subject to reasonable dispute ... as long as it is not unfair to a party to do so and does not

undermine the trial court's factfinding authority." *Indian Palms,* 61 F.3d at 205 (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)).

In this case, the fact that Debtor never filed an adversary complaint in his 1991 bankruptcy case requesting a determination that the HEAL loans be found dischargeable cannot be subject to reasonable dispute because this fact is evident from a review of the official court docket of Debtor's 1991 bankruptcy case. In addition, it is not unfair to Debtor for me to take judicial notice of this fact and taking judicial notice of this fact does not undermine my factfinding authority. *Indian Palms,* 61 F.3d at 205.

12. Even if Debtor had filed an adversary complaint in his 1991 bankruptcy case requesting that the HEAL loans be discharged, which I specifically find he did not, he would not have been entitled to discharge the HEAL loans. It cannot be disputed that his discharge was entered in his 1991 case on February 18, 1993, which is less than five years from the date that his HEAL loans first became due. *See* 42 U.S.C. § 294f(g), now renumbered as § 292f(g). *Wood,* 925 F.2d at 1582–83; *Degerness,* 1992 WL 295952, at *2.

*re Randall* ), 358 B.R. 145, 154 (Bankr. E.D.Pa.2006) (the Rooker–Feldman doctrine applies to state court default judgments).

In addition, Debtor's Counts 1, 2, 3 and 6 of the Complaint: (1) Seek to litigate claims that could have been raised in the underlying state court actions; and (2) involve the same parties or their privies and the same causes of action that were involved in the underlying state court actions. Final judgments were entered against Debtor by courts of competent jurisdiction in the underlying state court actions. For these reasons, even if I had subject matter jurisdiction over Counts 1, 2, 3 and 6 (which I do not), these Counts are barred under the doctrine of res judicata, also known as claim preclusion. *Munoz v. Sovereign Bank,* 323 Fed.Appx. 184, 187–88 (3d Cir.2009); *Schuldiner v. Kmart Corp.,* 284 Fed.Appx. 918, 920–21 (3d Cir. 2008); *Randall,* 358 B.R. at 165–66 (the res judicata doctrine applies to state court default judgments).

An exception to the Rooker–Feldman and other preclusionary doctrines was recognized by the court in *In re Dabrowski,* 257 B.R. 394 (Bankr.S.D.N.Y.2001). Specifically, the *Dabrowski* court held that Rooker–Feldman and other preclusionary doctrines do not apply to state court judgments that are void because of a bankruptcy discharge. Debtor argues that the state court judgments entered by the Lehigh County Court of Common Pleas are void because the HEAL loans upon which they were based were discharged in his 1991 bankruptcy case and that the *Dabrowski* exception applies.

The court in *Dabrowski* found only that a bankruptcy court was not preempted from hearing a case in which a state court incorrectly determined that a clear bankruptcy discharge did not affect the validity of state court claims or judgments. I previously found and I reiterate, however, that the HEAL loans were not discharged in Debtor's 1991 bankruptcy case. Debtor's underlying premise that the state court judgments are void is therefore erroneous. Debtor's reliance on *Dabrowski* is misplaced.

The state court judgments entered against Debtor are not void and the Rooker–Feldman and res judicata (claim preclusion) doctrines bar my consideration of Counts 1, 2, 3, and 6 of the Complaint and Debtor's attempt to argue that the HEAL loans and the debt he owes to HHS do not exist.[13] Defendants are therefore entitled to summary judgment on Counts 1, 2, 3 and 6 of the Complaint.

**D. THE JANUARY 5, 2012 ORDER DENYING DEBTOR A DISCHARGE IN THIS BANKRUPTCY CASE RENDERS DEBTOR'S ATTEMPT TO DISCHARGE THE HEAL LOANS IN THIS ADVERSARY PROCEEDING MOOT**

Count 5 of the Complaint seeks a present determination that the HEAL

---

**13.** The Rooker–Feldman and res judicata doctrines also bar me from considering Debtor's meritless argument that Defendants must produce the original promissory notes to be entitled to summary judgment. *Petroff–Kline,* 557 F.3d at 291 (rejecting the debtor's argument that the original promissory notes must be produced stating that "[p]hotocopies are allowed into evidence as if they were originals," quoting *Buziashvili v. Inman,* 106 F.3d 709, 717 (6th Cir.1997), invoking Fed.R.Evid. 1003). These doctrines also prohibit me from considering Debtor's meritless arguments concerning his name appearing in all capital letters in the state and federal court judgments entered against him and the alleged lack of service of the state court pleadings. Debtor advances the occasional spurious claim I hear that when a person's name is in all capital letters, that somehow does not refer to the same person as if the same were spelled in both upper and lower case letters. *I do not accept that claim as having any merit whatsoever.*

loans are dischargeable in this bankruptcy case under 42 U.S.C. § 292f(g).[14] The January 5, 2012 Opinion and Order I entered in *Deangelis v. Von Kiel (In re Von Kiel)*, Adv. No. 10-2136 (10-21364REF), reported in 461 B.R. 323 (Bankr.E.D.Pa. 2012), however, denied Debtor a discharge in this bankruptcy case under 11 U.S.C. § 727(a)(2), (3) and (4). Specifically, I found clear and convincing evidence that Debtor should be denied a discharge because he: (1) Was engaged in a fraudulent scheme to evade taxes and frustrate his creditors; (2) failed to keep and preserve recorded information from which his financial condition could be ascertained; (3) intentionally transferred and concealed assets with intent to hinder, delay or defraud a creditor or an officer of the estate within one year of the date he filed his bankruptcy petition; and (4) made false oaths or accounts in connection with his bankruptcy case.[15]

> Under 42 U.S.C. § 292f(g), HEAL loans may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—(1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended; (2) upon a

finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

Section 292f(g), by its very terms, applies only if a discharge is granted—which will not occur in this case because my January 5, 2012 Order denied Debtor a discharge under Section 727(a)(2), (3) and (4).

When a general discharge is denied under Section 727, issues regarding exceptions to discharge of specific debts under Section 523 or 42 U.S.C. § 292f(g) become moot. *Perotti v. Perotti (In re Perotti)*, Adv. No. 1:07-AP-00144, Bankr.No. 1:07-BR-01889MDF, 2008 WL 5158543, at *10 (Bankr.M.D.Pa. Aug. 27, 2008) (finding that "because § 727(a)(8) precludes a discharge in the instant case, a decision on dischargeability would be merely advisory and therefore improper"); *Rasmussen v. Unruh (In re Unruh)*, 278 B.R. 796, 807 (Bankr.D.Minn.2002); *Barnett Bank of Pasco County v. Decker (In re Decker)*, 105 B.R. 79, 82 (Bankr.M.D.Fla.1989) ("The threshold issue is whether the Debtor should be denied a general discharge in bankruptcy as a denial of his discharge will render the dischargeability issues academic and moot."); *Chillicothe State Bank v. Carroll (In re Carroll)*, 70 B.R. 143, 146

---

**14.** Debtor's argument that the HEAL loans must have been in default when his bankruptcy petition was filed in order for them to be deemed nondischargeable under 42 U.S.C. § 292f(g) and the Bankruptcy Code is fatally flawed. Debtor cites no authority for this proposition and none exists. In addition, as I explain in more detail throughout this Opinion, the debt Debtor owes to HHS: (1) Was not discharged in his 1991 bankruptcy case because he never filed an adversary complaint requesting a determination that the debt be discharged and he never established the elements necessary to have the HEAL loans discharged; and (2) cannot be discharged in this

case because I denied Debtor a discharge in this bankruptcy case in the Memorandum Opinion and Order I entered on January 5, 2012 in *Deangelis v. Von Kiel (In re Von Kiel)*, Adv. No. 10-2136 (10-21364REF), reported in 461 B.R. 323 (Bankr.E.D.Pa.2012).

**15.** I also found that Debtor's entire bankruptcy filing was undertaken to circumvent a decision rendered by United States District Court Judge Petrese B. Tucker and to frustrate her orders requiring that Debtor's compensation be garnished so that he may start to repay his substantial educational debts. *Von Kiel*, 461 B.R. at 328.

(Bankr.W.D.Mo.1986) ("if discharge is denied, all dischargeability proceedings become moot."); *Continental Bank v. Bobroff (In re Bobroff)*, 58 B.R. 950, 953 (Bankr.E.D.Pa.1986).

 "[F]ederal courts may adjudicate only actual, ongoing cases or controversies. It is of no consequence that the controversy was live at earlier stages in this case; it must be live when ... decid[ing] the issues. If a case is indeed moot, the Court must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Unruh*, 278 B.R. at 807 (citation omitted). To rule on the dischargeability of a specific debt after the debtor has been denied a general discharge would therefore constitute an improper advisory opinion. *Id.*

My decision denying Debtor a discharge under Section 727 renders the dischargeability of specific loans, including the HEAL loans, moot because I have already denied Debtor a discharge of any of his pre-petition debts. To rule on the dischargeability of the HEAL loans under these conditions would constitute an improper advisory opinion. For this reason, no question of material fact exists and Defendants are entitled to judgment as a matter of law on Count 5 of the Complaint.

## V. CONCLUSION

For all of these reasons, I find that no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law on Counts 1–6 of the Complaint.[16] I shall enter the accompanying Order granting Defendants' Motion for Summary Judgment on these Counts and denying Debtor's Cross–Motion for Summary Judgment.

16. Counts 7–15 of the Complaint were previously dismissed by my Order dated May 18, 2011, which granted Defendants' Motion To Dismiss. Only Counts 1–6 remained after my May 18 Order, which are disposed in the accompanying Order. No Counts remain pending after I enter the Order accompanying this Memorandum Opinion.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

AND NOW, this 19 day of June, 2012, upon my consideration of Defendants' Motion for Summary Judgment and documents filed in support thereof, Debtor's Cross–Motion for Summary Judgment and documents filed in support thereof, and the briefs filed by the parties, and upon the findings of fact and conclusions of law stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED and JUDGMENT ON COUNTS 1–6 OF THE COMPLAINT IS ENTERED IN FAVOR OF DEFENDANTS AND AGAINST DEBTOR.

IT IS FURTHER ORDERED that Debtor's Cross–Motion for Summary Judgment is DENIED.

