J-A15022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HILDO F. DEFRANCA AND MARIA DEFRANCA<br><br>                Appellee<br><br>         v.<br><br>ALBINO CONCRETE CONSTRUCTION CO., INC. D/B/A AND A/K/A JOAO ALBINO CONSTRUCTION AND D/B/A AND A/K/A JVL CONCRETE CO., INC.<br>JOAO ALBINO CONSTRUCTION AND JVL CONCRETE CO., INC. AND TRANS-FLEET CONCRETE, INC. AND SILVA CONCRETE, INC.<br>APPEAL OF: TRANS-FLEET CONCRETE, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 1868 EDA 2014 |

Appeal from the Judgment Entered June 17, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2012, No. 2487

BEFORE: BOWES, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:            **FILED JANUARY 06, 2016**

Appellant, Trans-Fleet Concrete, Inc. (Trans-Fleet), appeals from the $2,313,590.62 judgment entered on June 17, 2014 in favor of Appellees, Hildo F. DeFranca and Maria DeFranca, following a jury trial. After careful review, we affirm.

The trial court provided the following summary of the facts and procedural history of this case.

_____

[*] Former Justice specially assigned to the Superior Court.

This negligence action arises out of a workplace accident which occurred on March 22, 2010. [Appellee], Hildo F. DeFranca, was working for Girafa Construction which was contracted by Albino Concrete Construction Co. Inc. ([h]ereinafter "Albino") to build foundations and footings at new homes. On March 22, 2010, [Mr. DeFranca] was standing on top of a nine (9) foot wall holding the hose to pour cement. The hose from the concrete pump trunk clogged three times that day. On the third time, the concrete pump truck operator increased the pressure on the pump to unclog it. However, he did not give a signal to [Mr. DeFranca] for him to put the hose down and get out of the way. [Mr. DeFranca] was still holding the hose when the concrete pump truck operator increased the pressure on the pump. Due to the additional pressure on the pump, the hose was thrown from side to side and hit [Mr. DeFranca] in the head. Subsequently, [Mr. DeFranca] fell off the wall he was standing on and dropped down nine (9) feet into a basement. [Mr. DeFranca] sustained multiple injuries as a result of this incident.

[Mr. DeFranca] identified the concrete pump truck that was owned by 5 Star Concrete Pumping, LLC ([h]ereinafter "5 Star") as the concrete pump truck involved in his accident. 5 Star was a concrete pumping service formed in 2007 by Mr. Franks and Mrs. Franks. Mr. Franks owned fifty-one percent (51%) and Mrs. Franks owned forty-nine percent (49%). Prior to forming 5 Star to provide concrete pump truck services, Mr. Franks owned and operated concrete pump trucks through his ready-mix concrete delivery business, [] Trans-Fleet[.] Mr. and Mrs. Franks were the sole officers and executives of both [] Trans-Fleet and 5 Star. [] Trans-Fleet and 5 Star shared a business address, employees, and operated out of the same office space. When customers called [] Trans-Fleet, they could order concrete and a concrete pump truck all at once. The concrete was provided by [] Trans-Fleet. [] Trans-Fleet employees would provide a concrete pump truck exclusively by 5 Star. Both businesses had

- 2 -

separate invoicing systems, bank accounts, and tax returns. Mr. Franks personally trained all 5 Star concrete pump truck operators.

The [jury] [t]rial commenced on November 18, 2013 and concluded on November 25, 2013, when the [j]ury returned a verdict in favor of [] Hildo F. DeFranca, and Maria F. DeFranca, and against [] Trans-Fleet. The [j]ury found that 5 Star was an agent of [] Trans-Fleet at the time of [Mr. DeFranca's] accident on March 22, 2010. The [j]ury determined that 5 Star and [] Trans-Fleet were both negligent and their negligence was the factual cause of [Mr. DeFranca's] injuries. The [j]ury attributed 50% of the liability to 5 Star and 50% to [] Trans-Fleet. The [j]ury awarded [Mr.] DeFranca damages in the amount of [t]wo [m]illion ($2,000,000.00) [d]ollars and awarded [t]wo [h]undred and [f]ifty [t]housand ($250,000.00) [d]ollars to [] Maria F. DeFranca for her loss of consortium in connection to the incident that occurred on March 22, 2010. The [j]ury found Albino was not negligent. [Appellees] settled their claims against Albino prior to counsels' closing arguments.

[The DeFrancas] timely filed a [m]otion for [d]elay [d]amages which [the trial] [c]ourt [g]ranted in the amount of $63,590.62 to be added to the $2,250,000 [j]ury [v]erdict in accordance with an [o]rder dated June 6, 2014. [The DeFrancas] timely filed a [p]ost-[t]rial [m]otion to [m]old the [v]erdict which [the trial] [c]ourt [g]ranted as stated in an [o]rder dated June 6, 2014. [The trial] [c]ourt further [o]rdered that judgment be entered in the amount of $2,313,590.62 in the [DeFrancas'] favor and against [] Trans-Fleet to reflect its own negligence and its liability for the negligence of 5 Star. [] Trans-Fleet timely filed a [m]otion for [p]ost-[t]rial relief for [judgment notwithstanding the verdict (JNOV) or] a [n]ew [t]rial which [the trial] [c]ourt denied pursuant to an order dated June 6, 2014. [On June 18, 2014, Trans-Fleet filed a timely notice of appeal.] On July 9, 2014, [the trial] [c]ourt entered an order pursuant to Pa.R.[A].P. 1925(b)

- 3 -

requiring [Trans-Fleet] to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal. [] Trans-Fleet timely filed its 1925(b) Statement[.]

Trial Court Opinion, 10/16/14, at 1-3.

On appeal, Trans-Fleet raises the following issues for our review.

> 1. Whether the trial court erred in submitting the issue of vicarious liability of Trans-Fleet Concrete, Inc. via an alleged agency relationship with non-party 5 Star Concrete to the jury beyond the statute of limitations when no non-party agent had been properly identified throughout the course of the case and no evidence of an agency relationship between [A]ppellant and 5 Star was offered by the DeFrancas?
>
> 2. Whether the jury's verdict that Trans-Fleet may be liable as the alleged principal of non-party 5 Star is unsustainable, given that no evidence was proffered to support a finding of negligence by 5 Star?
>
> 3. Whether the trial court committed reversible error in excluding relevant, probative, admissible evidence that the alleged vehicle in question was not at the location of the incident, as confirmed via Global Positioning System Records, thereby prejudicing [A]ppellant at trial?
>
> 4. Whether the jury's verdict that Trans-Fleet may be liable for negligent training is unsustainable, given that the DeFrancas proffered nothing to suggest that Trans-Fleet held a legal duty to train the employees of another company, and there is no competent evidence in the record of negligent training in any event?

Trans-Fleet's Brief at 6-7.

Our standards of review of a trial court's denial of post-trial motions for JNOV and a new trial are as follows.

- 4 -

An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.

> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

> There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, … and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.] With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

Questions of credibility and conflicts in the evidence are for the [fact-finder] to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the jury could have

properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

**Braun v. Wal–Mart Stores, Inc.**, 24 A.3d 875, 890-91 (Pa. Super. 2011)

(brackets in original; internal citations and quotation marks omitted),

*affirmed*, 106 A.3d 656 (Pa. 2014).

> In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:
>
>> [I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.
>>
>> *    *    *
>>
>> Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.
>
> Moreover, our review must be tailored to a well-settled, two-part analysis:
>
>> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*ACE Am. Ins. Co. v. Underwriters at Lloyds and Cos.*, 939 A.2d 935, 939 (Pa. Super. 2007) (citations omitted), *affirmed*, 971 A.2d 1121 (Pa. 2009).

In its first issue on appeal, Trans-Fleet contends that the trial court should not have submitted the issue of agency to the jury. The argument section of Trans-Fleet's brief on appeal presents six subissues purportedly arising out of this issue. Trans-Fleet's Brief at 15-46. As such, we address each subissue in turn.

In its first three subissues, Trans-Fleet contends that the DeFrancas did not properly plead that Trans-Fleet was liable under an agency theory. *Id.* at 15-25. Specifically, Trans-Fleet argues that the DeFrancas did not identify an agent by name in the complaint, which is not sufficient. *Id.* at 18-25. Because the pleadings were inadequate, Trans-Fleet asserts the trial court should not have instructed the jury that it could find Trans-Fleet liable for the acts or omissions of its agent. *Id.* at 15-18.

This Court has previously held that averments of unnamed agents read in the context of the entire complaint are sufficient to put the defendant on notice of the claims against it, and unless the defendant seeks specification, it has to defend against those averments. *Yocoub v. Lehigh Valley Med. Assocs., P.C.*, 805 A.2d 579, 589-590 (Pa. Super. 2002), *appeal denied*, 825 A.2d 639 (Pa. 2003). In *Yocoub*, we reversed the trial court's decision to preclude the plaintiff from presenting evidence of an agency relationship

between a hospital and its radiologists because the plaintiff did not specifically identify the radiologists by name in its fourth amended complaint. *Id.* at 590. We noted that the purpose of allegations in a complaint is to put the defendant on notice of the claims that they will have to defend. *Id.* at 588. To determine whether the claims provided sufficient notice, we explained that the paragraphs of the complaint cannot be read in isolation from each other, but must be read together in context. *Id.* at 589. Applying these principles, we determined that the averment that the hospital was liable for the acts and omissions of its unnamed agents, read together with the allegations that the radiology department was negligent, was sufficient to put the hospital on notice that it must defend against a claim of agency. *Id.*

Further, we reasoned that because the hospital waited until the eve of trial to contest the specificity of the allegations of agency instead of filing preliminary objections requesting a more specific pleading or moving to strike the allegations of the unspecified agents, "any objection to the specificity of the complaint has been waived." *Id.* at 590 (citations omitted). Moreover, we noted that by the time the hospital first raised its specificity challenge, depositions had been completed and the plaintiff's expert had filed his report, concluding that two radiologists, who were not named as defendants, had been negligent, so it was apparent that the plaintiff was pursuing an agency theory. *Id.*

Herein, we conclude that the allegations in the complaint were sufficient to put Trans-Fleet on notice that it had to defend against an agency theory based on its relationship with 5 Star. The complaint pled a straightforward negligence action against Trans-Fleet, Albino, Joao Albino, JVL Concrete Co., Inc., and Silva Concrete, Inc. based on the injuries sustained by Mr. DeFranca on March 22, 2010 at a specific construction site while operating a cement pump truck hose that had become clogged. First Amended Complaint, 5/7/12, at 1-5. The complaint also contained several paragraphs asserting that Trans-Fleet was liable based on the negligence of its agents. *Id.* at ¶¶ 9, 23, 27-31. The DeFrancas alleged the negligence of Trans-Fleet and its agents, in part, as follows.

> 23. It is believed and, therefore averred, that the Defendants, by and through **their agents**, servants, workers and/or employees, were negligent including, but not limited, to the following:
>
> > a) Failing to provide training and supervision … to its workers and employees …;
> >
> > b) Failing to … adequately and properly warn and instruct the Plaintiff …;
> >
> > …
> >
> > d) Failing to properly educate, hire, train, supervise and monitor its contractors, subcontractors and employees with regard to work place safety;
> >
> > …
> >
> > f) Failing to properly inspect the cement pump truck, hose and equipment;

- 9 -

g) Failing to properly maintain the cement pump truck, hose and equipment;

h) Failing to properly operate the cement truck, hose and equipment;

i) Failing to properly prepare, prime and control the cement pump truck, hose, equipment and load;

…

m) Defendants failed to take all reasonable and necessary measures to protect the Plaintiff … from dangerous conditions upon its premises, i.e. negligent operation of the pump truck and equipment and lack of fall protection ….

*Id.* at ¶ 23(a)-(b), (d), (f)-(i), (m) (emphasis added). Therefore, viewing the complaint as a whole, we conclude that the allegations were sufficient to put Trans-Fleet on notice that it had to defend against a claim that Mr. DeFranca sustained injuries as a result of the negligence of Trans-Fleet's agents operating the cement pump truck on March 22, 2010 at the construction site at 317 Chapman Drive, Perkasie, Pennsylvania.

Moreover, we conclude that Trans-Fleet waived its objection to the specificity of the complaint because it did not file preliminary objections seeking more specificity or moving to strike the allegations. *See Yocoub*, *supra* at 590. Further, we note that the actions taken by Trans-Fleet indicate that it had actual notice that it had to defend against the negligence of 5 Star. For instance, in response to the complaint, Mrs. Franks executed an affidavit of non-involvement denying that Trans-Fleet had any agents at

the construction site. Affidavit of Non-Involvement, 8/13/12. On the same day, Trans-Fleet filed an answer to the complaint, denying that its agents were negligent. Trans-Fleet's Answer, 8/13/12, at ¶¶ 9, 23, 27-31. Similarly, the deposition of Mrs. Franks, one of the owners of Trans-Fleet and 5 Star, contained a line of questioning about 5 Star's potential negligence. Plaintiff's pretrial memorandum also alleged that Trans-Fleet acted through its "agent and alter ego," 5 Star. On August 13, 2013, Trans-Fleet advised the DeFrancas that Mrs. Franks had GPS records that showed 5 Star did not have vehicle at the construction site on the day of the incident. Similarly, at trial, Trans-Fleet attempted to defend against the allegations of agency by demonstrating that 5 Star was not at the construction site and, instead, the pump truck of TD Concrete injured Mr. DeFranca. The foregoing examples demonstrate Trans-Fleet had actual notice, thus we conclude that the trial court did not err or abuse its discretion when it found that "Trans-Fleet should have known that the only possible agent that the [DeFrancas] would be referring to was 5 Star." Trial Court Opinion, 10/16/14, at 6. Therefore, Trans-Fleet's first three subissues are meritless and the issue of agency was properly submitted to the jury.

Next, we conclude Trans-Fleet has waived its fourth and fifth subissues to its first issue on appeal. In those subissues, Trans-Fleet asserts that the proofs at trial varied from the pleadings, and the late addition of the agency theory constituted an improper *de facto* amendment of the pleadings.

Trans-Fleet's Brief at 25-37. Neither of these issues were included in Trans-Fleet's Rule 1925(b) statement nor are reasonably inferable from any of the issues included therein. *See* Trans-Fleet's Concise Statement of Errors Complained of on Appeal, 7/30/14. Hence, we deem the issues waived. "Any issues not raised in a Rule 1925(b) statement will be deemed waived." *Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011).

> Our Supreme Court intended the holding in [*Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998)] to operate as a bright-line rule, such that "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised." *Commonwealth v. Schofield*, 585 Pa. 389, 888 A.2d 771, 774 (2005) (emphasis added); *see also* [*Commonwealth v. Castillo*, 888 A.2d 775, 780 (2005)]. Given the automatic nature of this type of waiver, we are required to address the issue once it comes to our attention.

*Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 223-224 (Pa. Super. 2014) (*en banc*) (emphasis in original).[1]

In its sixth subissue to its first issue on appeal, Trans-Fleet contends that the DeFrancas did not introduce any evidence to support an agency relationship between Trans-Fleet and 5 Star. Trans-Fleet's Brief at 38-42. Trans-Fleet further argues that the trial court *de facto* pierced the corporate

---

[1] Even if these issues were not waived, we would conclude that the proofs did not vary from the pleadings because, as discussed above, the DeFrancas' complaint sufficiently pled a theory of agency. For the same reason, we would conclude the trial court did not permit a *de facto* amendment of the complaint.

veil when it permitted Trans-Fleet to be held liable for the acts of a separate corporate entity. *Id.* at 42-46.

This Court has defined an agency relationship as follows.

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.
>
> …
>
> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. The creation of an agency relationship requires no special formalities. The existence of an agency relationship is a question of fact. The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed. However, we do not assume agency by a mere showing that one person does an act for another.

- 13 -

***B & L Asphalt Industries, Inc. v. Fusco***, 753 A.2d
264, 269 (Pa. Super. 2000).

***Walton v. Johnson***, 66 A.3d 782, 786-787 (Pa. Super. 2013) (footnote,

some citations, and internal quotation marks omitted).

The trial court aptly analyzed this issue in its Rule 1925(a) opinion.

> Here, the facts that were presented to the [j]ury were in dispute, thereby, [the] [t]rial [c]ourt did not err in allowing the [j]ury to properly determine whether an agency relationship existed between [] Trans-Fleet and 5 Star. [] Trans-Fleet presented the testimony of Mr. and Mrs. Franks who were the sole officers and executives of [] Trans-Fleet and 5 Star. Mrs. Franks testified that [] Trans-Fleet delivered ready-mix concrete and 5 Star was a concrete pumping service. Mrs. Franks testified that both companies had separate invoicing systems, bank accounts, tax returns, pricing, telephone numbers, and websites. On cross examination, Mrs. Franks testified that the business address for [] Trans-Fleet and 5 Star was the same and they operated out of the same office. There was one sign outside of that business address that advertised the businesses of both [] Trans-Fleet and 5 Star. The employees for [] Trans-Fleet were the same employees that generated invoices and answered the phones for 5 Star. In March of 2010, when customers called [] Trans-Fleet, they could order concrete and a concrete pump truck all with one phone call. The concrete was provided by [] Trans-Fleet. Then, [] Trans-Fleet's employees provided a concrete pump truck exclusively from 5 Star. As the [p]resident of [] Trans-Fleet, Mr. Franks provided the only training that was required to operate 5 Star's concrete pump trucks. Mr. John Leal, the owner of Albino, testified that when he hired [] Trans-Fleet in 2010 to deliver concrete and a concrete pump truck, he thought that [] Trans-Fleet supplied both the concrete and the concrete pumps. As the evidence demonstrated at [t]rial and was briefly summarized

- 14 -

> above, there was sufficient evidence presented which would lead the [j]ury to determine an agency relationship existed. Since there was a factual dispute regarding the agency relationship between [] Trans-Fleet and 5 Star, the question was properly submitted to the [j]ury.

Trial Court Opinion, 10/16/14, at 8-9 (citations omitted). We conclude that the trial court did not commit an error of law or an abuse of discretion, and this portion of Trans-Fleet's sixth subissue lacks merit.

Further, Trans-Fleet contends that the trial court's actions amounted to a *de facto* piercing of the corporate veil under the "single entity" theory. Trans-Fleet's Brief at 42, 44. However, Trans-Fleet did not raise this issue in its Rule 1925(b) statement and it is not reasonably inferable from any of the issues included therein. **See** Trans-Fleet's Concise Statement of Errors Complained of on Appeal, 7/30/14. Accordingly, we deem this portion of Trans-Fleet's sixth subissue waived. **See Greater Erie**, **supra**.

In its second issue on appeal, Trans-Fleet argues that the verdict was against the weight of the evidence because the DeFrancas did not introduce evidence that a 5 Star pump truck was at the construction site on the day Mr. DeFranca was injured. Trans-Fleet's Brief at 46-49. Specifically, Trans-Fleet submits that Mr. DeFranca's testimony did not reference 5 Star by name and Trans-Fleet claims that DeFranca's description of the color scheme of the pump truck involved in the incident did not match the color scheme of 5 Star's pump trucks. We begin by noting the standard that guides our review of claims that a verdict is against the weight of the evidence.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Haan v. Wells*, 103 A.3d 60, 69-70 (Pa. Super. 2014) (citations and internal quotation marks omitted; brackets in original).

In the trial court's opinion, it detailed the evidence the DeFrancas presented at trial that supported the jury's verdict as follows.

- 16 -

During the trial, ample evidence was presented that the 5 Star concrete pump truck was the truck that caused [Mr. DeFranca's] injury and that a concrete delivery truck owned by [] Trans-Fleet was at the worksite at the time of the injury. [Mr. DeFranca] testified that on the day of his fall[,] the pump truck was yellow. He also identified the 5 Star concrete pump truck in a photograph that was marked as Exhibit P-4 as a true and accurate depiction of the pump truck involved in his accident. On cross examination, [Mr. DeFranca] clarified that when he was asked the color of the pump truck in which he replied yellow, he was referring to the boom which is part of the pump truck that he was holding onto. Mrs. Franks, the Secretary and Treasurer of Trans-Fleet and the []49%[] owner of 5 Star, testified that in March of 2010, 5 Star's pump trucks were white with a yellow and green stripe and a yellow boom. [The DeFrancas] also read to the [j]ury from the transcript of the deposition testimony of Mr. John Leal, the President of Albino Construction. Mr. Leal was asked by [] Trans-Fleet whether he had any specific recollection of working with Trans-Fleet on the job where [Mr. DeFranca] was injured. Mr. Leal responded that he [was not] positive as far as Trans-Fleet working on that job site but probably. The testimony of [Mr. DeFranca], Mrs. Franks, and Mr. Leal that was presented to the [j]ury was sufficient evidence that could reasonably lead a [j]ury to conclude that Trans-Fleet and/or 5 Star's vehicles and operators were involved in [Mr. DeFranca's] accident on March 22, 2010.

Trial Court Opinion, 10/16/14, at 11-12 (citations omitted).

We have reviewed the record and the trial court's consideration of the same, and we discern no abuse of discretion in the trial court's rejection of Trans-Fleet's weight of the evidence claim. As the trial court noted, there was ample evidence that Mr. DeFranca was injured while operating a pump connected to a 5 Star pump truck. *Id.* Specifically, Mr. DeFranca testified

that the pump truck pictured in exhibit P-4 was a true and accurate depiction of the pump truck involved in his accident. **See id.**; N.T., 11/19/13, at 27.[2] Similarly, on cross-examination, Mr. DeFranca clarified that when he identified the truck as yellow, he was referring to the boom on the truck, which was the part of the truck that he was in direct contact with. N.T., 11/19/13, at 44. Mrs. Franks' testimony confirmed that 5 Star's pump trucks had a yellow boom. N.T., 11/20/13, at 80, 86. The factfinder was free to weigh this evidence and conclude it was credible, and to reject Trans-Fleet's argument to the contrary. Having reviewed the record, we conclude the record supported this determination. Consequently, the trial court did not abuse its discretion in refusing to grant JNOV based on the weight of the evidence, and Trans-Fleet's second issue on appeal is meritless. **See Haan**, **supra**.

In its third issue on appeal, Trans-Fleet contends that the trial court improperly excluded, as hearsay, GPS evidence that allegedly indicated that a 5 Star vehicle was not in the vicinity of the construction site on March 22,

_____

[2] We note that the trial exhibits are not part of the certified record, and our attempt to obtain them from the trial court was unsuccessful. The DeFrancas' brief represents that the original exhibit P-4 "cannot be located," but the DeFrancas supplemented the reproduced record with a photograph that they claim is identical to the one that was submitted as P-4. The trial court's description of exhibit P-4 in its 1925(a) opinion confirms the contents of exhibit P-4. Accordingly, we address the merits of this issue and decline to find waiver.

2010. Trans-Fleet's Brief at 50-57. We review trial courts evidentiary rulings according to the following standard.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 496 (Pa. Super. 2011) (citations and internal quotation marks omitted).

Specifically, 5 Star argues that the GPS evidence was admissible as a record regularly kept in the course of its business. Trans-Fleet's Brief at 50. We note that Pennsylvania Rule of Evidence 803(6) provides a record of a regularly conducted business activity will not be excluded by the rule against hearsay if all the following conditions are met.

> **Rule 803. Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness**
>
> …
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

- 19 -

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6)(A)-(E).

5 Star asserts that Mrs. Franks, as the user and keeper of the records, was the only witness necessary to establish the trustworthiness of the records. *Id.* at 54. The trial court, however, disagreed and explained that Mrs. Franks could not do so because she was not the party that actually made the GPS records as follows.

> During oral argument at trial, [] Trans-Fleet argued that the GPS data records were business records of Trans-Fleet because they were regularly kept by Mrs. Franks and she had personal knowledge of them. The GPS data records would have been introduced into evidence through the testimony of Mrs. Franks. Mrs. Franks would have testified that the GPS data records were maintained on Trans-Fleet's work computer, updated every day, and tracked where employees traveled each day and what truck and/or equipment was used. Defendant Trans-Fleet stated that Mrs. Franks had personal knowledge of the GPS data records because she had the Five Cubits Track It system open on her office

computer every day and used the printout of the information created by that system. Mrs. Franks did not create the GPS data records that [] Trans-Fleet sought to introduce. Instead, [Mrs. Franks] used the GPS data that was created by other companies. The GPS data records at issue contained GPS coordinates that were taken from a company that operated the satellite, who them forwarded the information to the Five Cubits Track It system which created the records that Mrs. Franks accessed on her Trans-Fleet computer to track the location of her employees, trucks, and equipment. [The] [t]rial [c]ourt found that Mrs. Franks did not have the requisite knowledge to establish the trustworthiness needed for GPS data records to be admitted into evidence as a business record under Pa.[R.E.] 803(6).

[]Trans-Fleet did not present a witness from the company that operated the GPS satellite or a witness from Five Cubits Track It system[, the company that created the GPS records,] with knowledge that could be sufficient evidence for the trustworthiness of the GPS data reords. Thus, the [DeFrancas] would have been precluded from cross examining the creator of the data about how the GPS tracking units were calibrated, whether the satellites were tested that day to determine if they were functional in the area where the incident occurred on March 22, 2010. Additionally, the [DeFrancas] would have been precluded from inquiring into how Five Cubits Track It gathered the information, created the GPS data records used by Mrs. Franks, and the reliability and accuracy of those GPS data records. Therefore, [the] [t]rial [c]ourt [] excluded the GPS data records as they were inadmissible hearsay due to the lack of trustworthiness created by the absence of a witness with knowledge as to the creation and accuracy of these records.

Trial Court Opinion, 10/16/14, at 12-13 (citations omitted).

After careful review, we conclude that the trial court did not abuse its discretion or commit an error of law. The record supports the trial court's

conclusion that Mrs. Franks was not the proper witness to authenticate the GPS records and establish their trustworthiness because she was not the one who created them. Instead, Five Cubits Track It, a third party company, created the records based on information it received from a GPS satellite company. Mrs. Franks merely viewed the records after Five Cubits Track It created them. The trial court was in the best position to determine the trustworthiness of the evidence, and we will not substitute our judgment. We conclude that the trial court did not abuse its discretion or err as a matter of law in excluding the GPS records, based on its concerns about the authentication and trustworthiness of the evidence. **See Smith**, **supra** (explaining "regardless of a 'nationwide trend' and 'clear federal precedent' for allowing the introduction of business records consisting of documents generated by third parties, the Pennsylvania Supreme Court has not seen fit to adopt the rule of incorporation[]").

Moreover, prior to trial, Trans-Fleet's counsel agreed that the GPS records were not admissible in the absence of testimony from a Five Cubits Track It representative. N.T., 11/15/13, at 37 (conceding "If I can't get [a representative of Five Cubits Track It] here … I don't disagree that I can't authenticate the [GPS] records[]"). The trial court then stated that it would revisit the issue if Trans-Fleet presented such a representative. **Id.** Trans-Fleet, however, did not obtain a Five Cubits Track It representative to testify in its case or attempt to introduce the GPS records at trial. Accordingly, we

conclude that Trans-Fleet's third issue on appeal lacks merit. ***See Smith***, ***supra***.

In its fourth issue on appeal, Trans-Fleet argues that the trial court erred by submitting the issue of negligent training to the jury. Trans-Fleet's Brief at 57-60. Specifically, Trans-Fleet maintains that it did not have a duty to train 5 Star's employees because the two companies were separate entities. *Id.* at 57-58. Further, Trans-Fleet submits that the evidence presented showed that the pump truck operator actually was trained properly because he correctly unclogged the hose twice before the accident. *Id.* at 58. The trial court explained that the following evidence supported submitting the issue to the jury.

> The [DeFrancas] presented the testimony of Mr. Thomas Cocchiola, P.E., an expert in the fields of mechanical and safety engineering. Mr. Cocchiola testified that the American Concrete Pumping Association manuals which address safety procedures regarding clogs and hose whipping states that the pump operator should stop the pump, get the people out of the way, and try to jog it back and forth to try and release or reduce or remove the clog, but ultimately shut it down, dissipate pressure, and then disassemble the lines and clean them out. The testimony of [Mr. DeFranca] indicated that the pump truck operator did not signal [Mr. DeFranca] to get out [of] the way and increased the pressure which caused the hose whipping. Mr. Cocchiola testified to a reasonable degree of mechanical and safety engineering that the pump truck operator did not meet the standard of care as described by the American Concrete Pumping Association manuals. He further testified that the concrete pump truck operator did not follow what basically is the industry

custom and practice with respect to operating the pump and attending to a clog.

Mr. Franks, the owner of Trans-Fleet and the []51%[] owner of 5 Star, testified that as the president of Trans-Fleet he had been involved with providing training to operators of concrete pump trucks and continued to do so after 5 Star was created in 2007. Mr. Franks did not require the pump truck operators that worked for him to be tested on the owner's manuals before they began to operate the pump. Mr. Franks required them to go through training with him before they operated the pump on their own. A jury could reasonably conclude that Trans-Fleet had a duty to train the pump truck operators based on Mr. Franks' testimony that the only training required to work at 5 Star is with him. A jury could also reasonably conclude that Trans-Fleet's training was negligent because the [DeFrancas'] mechanical and safety engineering expert, Mr. Cocchiola, testified that the pump truck operator's actions were below the standard of care. Based on the testimony of Mr. Franks and Mr. Cocchiola, [the] [t]rial [c]ourt did not err in allowing the [j]ury to consider whether there was negligent training by Trans-Fleet.

Trial Court Opinion, 10/16/14, at 14-15 (footnote and citations omitted).

After carefully reviewing the record and the trial court's opinion, we conclude that the trial court's Rule 1925(a) opinion fully sets forth Appellant's claims, identifies the proper standard of review, discusses the evidence presented at trial, and explains the basis for its conclusion that there was sufficient evidence on the issue of negligent training to submit it to the jury. We conclude that the well-reasoned opinion of Judge Paul P. Panepinto is in agreement with our own views. Accordingly, we conclude the

trial court did not abuse its discretion or err as a matter of law in submitting the issue of negligent training to the jury.

Based on the foregoing, we conclude all of Trans-Fleet's issues on appeal are waived or devoid of merit. The trial court did not commit a clear abuse of discretion or error of law that would warrant JNOV or a new trial. ***See Braun***, ***supra***; ***ACE Am. Ins. Co.***, ***supra***. Therefore, we affirm the June 17, 2014 judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016